**Wolfgang HAHN and Janet Elaine Hahn, Appellants,**

**v.**

**ALASKA TITLE GUARANTY COMPANY, Appellee.**

**No. 2801.**

Supreme Court of Alaska.

Dec. 6, 1976.

Lee S. Glass, of Johnson, Christenson, Shamberg & Link, Inc., Anchorage, for appellants.

John P. Irvine, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, J.

BOOCHEVER, Chief Justice.

Wolfgang and Janet Elaine Hahn purchased a title insurance policy from Alaska Title Guaranty Company. The policy, which was issued in 1969, indicated that there was a reservation for a right-of-way for roadway and public utility purposes over the east 33 feet of the premises as contained in the United States patent.

**144**

Subsequently, the State of Alaska claimed an easement 50 feet in width, 17 feet more than the 33 foot easement indicated in the policy, along the easterly boundary of the premises. The State claimed the easement under Public Land Order No. 601, issued by the Secretary of Interior on August 10, 1949 [1] and filed with the office of Federal Register on August 15, 1949 in Washington, D.C. The public land order was not recorded under the Alaska Recording Acts, and neither the order nor the easement created by it is referred to in the original patent issued on June 28, 1961. The order was published in the Federal Register.[2]

In 1974, the State of Alaska, as successor in interest to the United States Government, constructed a paved road which occupied land 50 feet in width along the eastern boundary of the Hahn's property. The Hahns brought suit against the title company for the damages attributable to the loss of the 17 foot strip of property in excess of the 33 foot easement specified in the title policy. After the Hahns filed a motion for summary judgment, the trial court granted summary judgment to the title company. From that judgment, the Hahns appeal.

The basic issue to be determined is whether the title company was obligated to list the wider 50 foot easement as an encumbrance. The title company contends that their coverage is limited, by General Exception # 1, to claims disclosed by "public records" as defined in the policy and that the definition does not include public land orders published in the Federal Register. "Public records" are defined in Paragraph 4(d) of the policy to be "records, which under the recording laws, impart constructive notice with respect to said real estate". Thus, we must decide whether a public land order filed with the office of the Federal Register constitutes a

record which, under recording laws, imparts constructive notice with respect to the property in question.

Oddly enough, neither the efforts of counsel nor our independent research has uncovered a case squarely on point. This paucity of case authority may be explained in part by the introduction to Chapter 12 of Patton on Titles.

A generation ago, there was only about half as many kinds of liens imposed by federal statute as at present. And of the classes then in existence, judgments, lis pendens, etc., *the volume of items was so small in comparison to the number of land transfers that one seldom heard of a tract which was incumbered by a federal lien. To such an extent was this the case that, though in the majority of counties abstractors and examiners ignored them, there appear to have been but few losses from that source.* Everyone recognizes however, that the United States, the same as the state in which a tract of land is situated, is a sovereignty, with power to prescribe the effect of judgments of its courts and of charges imposed by its statutes, and that such judgments and charges are now of considerable prevalence. *A present-day examiner cannot, therefore, do his duty to his client without considering the possibilities of incumbrance on account of* provisions of the federal statutes. . . . [Emphasis added] Patton On Titles, Vol. II, ch. 12, § 65 page 575.

Patton on Titles *does not*, however, discuss the effect of encumbrances arising under federal executive orders, which are published in the Federal Register.

 In determining the construction of insurance policy provisions, it is well established that ambiguities are to be construed in favor of the insured.[3] Also in

1. The order was issued pursuant to the power granted the Secretary of Interior under Executive Order No. 9337 of April 24, 1943.

2. 14 Federal Register at 5048.

3. *Gillespie v. Travelers Insurance Co.*, 486 F.2d 281, 283 (9th Cir. 1973) ; *Pepsi Cola Bottling Co. of Anchorage v. New Hampshire Insurance Co.*, 407 P.2d 1009, 1013 (Alaska 1965) ; *Lumbermen's Mutual Casualty Co. v.*

the insured's favor is the rule that provisions of coverage should be construed broadly while exclusions are interpreted narrowly against the insured.[4] These rules of construction have evolved due to the unequal bargaining power of insureds relative to insurance companies. Usually, as in this case, the insured is presented with a form policy and has no choice as to its provisions.[5]

Here, as indicated by the trial judge, in the absence of the definition portion of the policy, there would be little difficulty in construing the term "public records" to include material published in the Federal Register. 44 U.S.C. § 1507 indicates that such material is a matter of public record.

> . . . [u]nless otherwise specifically provided by statute, filing of a document, required or authorized to be published by section 1505 of this title, except in cases where notice by publication is insufficient in law, is sufficient to give notice of the contents of the document to a person subject to or affected by it. . . .[6]

This appeal focuses on the definition in the policy of public records as "records, which under the recording laws, impart constructive notice with respect to said real estate". As indicated by 44 U.S.C. § 1507, the publication in the Federal Register does impart constructive notice. When Public Land Order No. 601 appeared in the Federal Register, constructive notice was furnished with respect to the real estate described therein. The description of the easement reserved included a portion of the Hahns' property.[7]

The only part of the definition which is not clearly in favor of the Hahns' construction is the portion which refers to "the recording laws". The title company would have us construe the phrase as meaning "the recording laws *of Alaska*", but nowhere is the definition so limited. The most that may be said in support of the title company's position is that the language might be ambiguous, in which event it must be construed in favor of the Hahns. We see no reason why the term does not incorporate federal recording laws

*Continental Casualty Co.*, 387 P.2d 104, 108 (Alaska 1963).

4. *State Farm Mutual Automobile Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123, 128 (1973).

5. We have held that insurance policies are to be looked upon as contracts of adhesion for the purpose of determining the rights of parties thereto. The result of such a finding is to construe the policy so as to provide that coverage which a layman would reasonably have expected given his lay interpretation of the policy terms. *Graham v. Rockman*, 504 P.2d 1351, 1357 (Alaska 1972); *Continental Ins. Co. v. Bussell*, 498 P.2d 706, 710 (Alaska 1972); *cf. National Indemnity Co. v. Flesher*, 469 P.2d 360, 366 (Alaska 1970).

6. There is no question that Public Land Order No. 601 was authorized to be published under 44 U.S.C. § 1505(a)(1), which provides in part for publication in the Federal Register of Executive Orders.

7. Public Land Order No. 601 provided in part:

> Subject to valid existing rights and to existing surveys and withdrawals for other than highway purposes, the public lands in

Alaska lying within 300 feet on each side of the center line of the Alaska Highway. 150 feet on each side of the center line of all other through roads. 100 feet on each side of the center line of all feeder roads, and 50 feet on each side of the center line of all local roads in accordance with the following classifications, are hereby withdrawn from all forms of appropriation under the public-land laws, including the mining and mineral-leasing laws, and revised for right-of-way purposes:

THROUGH ROADS

Alaska Highway, Richardson Highway, Glenn Highway, Haines Highway, Tok Cut-Off.

FEEDER ROADS

Steese Highway, Elliott Highway, McKinley Park Road, Anchorage-Potter-Indian Road, Edgerton Cut-Off, Tok-Eagle Road, Ruby-Long-Poorman Road, Nome-Soffmoir Road, Kenai Lake-Homer Road, Fairbanks-College Road, Anchorage-Lake Spenard Road, Circle Hot Springs Road.

LOCAL ROADS

All roads not classified above as Through Roads or Feeder Roads, established or maintained under the jurisdiction of the Secretary of the Interior.

insofar as they are applicable to Alaska property.

Whether the statute providing for publication of orders, such as Public Land Order No. 601, in the Federal Register may be regarded as a "recording law" depends on the meaning to be given that quoted term. While we have been unable to find a case squarely on point, dictum in *Hotch v. United States*, 212 F.2d 280, 14 Alaska 594 (9th Cir. 1954) indicates that the Federal Register Act is a recording statute. In that case, Hotch appealed from a conviction for fishing in violation of a regulation of the Department of Interior extending the period closed to commercial fishing on the Taku Inlet, Alaska. He argued that the regulation was ineffective since it had not been published in the Federal Register. The government argued that the defense was inapplicable since Hotch had actual knowledge of the regulation. The court discussed two functions of the Federal Register Act; one, the requirement of publication in order to establish the validity of certain documents; and the other, the furnishing of actual and constructive notice of government acts. It held the regulation to be invalid due to failure to comply with the statutory requirements of publication. Actual notice was held not to obviate the requirement that the regulation itself must be published. As pertains to the notice function of the Federal Register Act, the court's statement is particularly applicable here.

> While the Administrative Procedure Act and the Federal Register Act are set up in terms of making information available to the public, the Acts are *more than mere recording statutes* whose function

is solely to give constructive notice to persons who do not have actual notice of certain agency rules. *Hotch v. United States, supra,* at 283. [Emphasis added] [Citations omitted]

The United States Court of Appeals for the Ninth Circuit thus clearly indicated that the Federal Register Act was a recording statute. There is no question but that publication of a record therein imparts "constructive notice".[8] Public Land Order No. 601 referred to the real estate in question. It follows that publication of Public Land Order No. 601 complies with the policy definition of "records which, under the recording laws, impart constructive notice with respect to said real estate".[9]

Moreover, this construction conforms to the general meaning of the terms used. Black's Law Dictionary, Revised 4th ed. defines the verb, "record", as ". . . To transcribe a document . . . in an official volume, for the purpose of giving notice of the same, of furnishing authentic evidence, and for preservation."[10] This is exactly what is accomplished by publication in the Federal Register. Since such publication is authorized by statute, it constitutes a record under a "recording law(s)".

If it were an insurmountable burden to have title companies ascertain whether property has been affected by orders published in the Federal Register, we might have some difficulty with construing the policy language so literally and might find more persuasive an argument that we should look only to the Alaska recording laws. We note that the trial judge specifically inquired at the time of argument as to the difficulties that would be encountered by title companies in reviewing rele-

---

8. *See,* 44 U.S.C. § 1507, quoted in part, *supra.*

9. Other cases holding that the Federal Register is a recording statute imparting constructive notice under varying circumstances, are *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10, 15 (1947) ; *United States v. Millsap*, 208 F. Supp. 511, 516 (D.Wyo.1962) ; *Graham v. Lawrimore*, 185 F.Supp. 761, 763–64 (D. S.C.1960) ; *Lynsky v. United States*, 126

F.Supp. 453, 455, 130 Ct.Cl. 149 (1954) ; *Bohannon v. American Petroleum Transport Co.*, 86 F.Supp. 1003, 1005 (D.N.Y.1949) ; *Toledo P&W R.R. v. Stover*, 60 F.Supp. 587, 596 (D.Ill.1945) ; *Marshall Produce Co. v. St. Paul Fire and Marine Ins. Co.*, 256 Minn. 404, 98 N.W.2d 280, 291 (1959).

10. Black's Law Dictionary, Fourth Revised Ed. 1437.

vant public land orders. Counsel, in response, submitted affidavits indicating that such reviews were not customarily made. The affidavits, however, are significantly silent as to any burden involved in checking the Federal Register. Alaska's statutes regulating title insurance companies require that "[a] title insurance company shall own and maintain in the recording district in which its principal office in the state is located a title plant consisting of adequate maps and fully indexed records showing all instruments of record affecting all land within the recording district for a period of at least 25 years immediately before the date a policy of title insurance is issued by the title insurance company. . . ."[11] A public land order published in the Federal Register would appear to be such an instrument of record affecting the land, and therefore, copies should be available in the title company's plant.

Our construction of the policy has the additional function of requiring the companies to furnish that degree of protection which a purchaser of a title insurance policy is likely to expect. As we read the exception in the policy of "public or private easements not disclosed by the public records", it is intended primarily to protect against unrecorded easements or rights of way acquired by prescription which could only be discovered by physical inspection of the land itself. The title companies do not undertake such a burden and therefore should not be responsible for failure to note such encumbrances.

By this opinion, we do not require title companies to insure against all defects which would be revealed by all documents kept by public bodies. Title companies are chargeable, however, with revealing defects ascertainable from documents published under statutory authority for the purpose of giving constructive notice in places, including Alaska.

In view of our discussion in this matter, it is unnecessary to reach the other issues raised on this appeal.

The summary judgment in favor of the title company is reversed and the case is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

11. AS 21.66.200.