702 P.2d 840

**C.E. THOMPSON, Plaintiff-Appellant,**

v.

**ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY, a corporation,
Defendant-Respondent.**

No. 15045.

Supreme Court of Idaho.

June 27, 1985.

Thomas A. Mitchell, Coeur d'Alene, for plaintiff-appellant.

John W. Walker, Moscow, Curtis L. Shoemaker, of Paine Hamblen, Coffin & Brooke, Spokane, Wash., for defendant-respondent.

BAKES, Justice.

The issue presented by this case is whether a malpractice action, which includes both a claim for personal injury to the patient and a damage claim for loss of consortium by the spouse, generates the "each claim" liability limit or the "annual aggregate" liability limit under this particular liability insurance policy.

Dr. Thompson purchased an insurance policy from St. Paul Fire & Marine Insurance Co. (St. Paul) to insure against claims first made during the policy period and arising out of the performance of professional services. During the policy period a complaint was filed against Thompson claiming personal injury to a woman patient and loss of consortium to the patient's spouse.[1] No other claims were made during the policy period. St. Paul undertook the defense of Thompson in this malpractice action, and the record does not reflect the final resolution, if any, of that case.

The declarations page of Thompson's liability policy lists the limits of liability as $150,000 for "each claim" and $300,000 for the "annual aggregate." The policy further states:

"The limit of liability stated in the declarations as applicable to 'each claim' is the limit of the company's liability for loss resulting from any one claim or suit or all claims or suits first made during the policy year because of injury to or death of any one person...."

While the malpractice action was pending, Thompson filed a complaint in this case against St. Paul seeking a declaration that "there are two separate and distinct claims within the meaning of the policy, being brought by [patient] and [spouse], and that the limits of liability provided by [the poli-

---

1. The complaint of Dr. Thompson's patient and her spouse is not included in the record.

cy] would be up to $150,000 for each claim separately...." Both parties filed motions for summary judgment. The district court granted St. Paul's motion by stating:

"The paragraph which appears [in the policy] ... makes clear that the contract envisions multiple claims or suits arising from a single injury to one person, and it treats these multiple claims arising from the treatment of one person as coming under a single limit—in this case $150,000."

Thompson has appealed.

We have recently held that "the claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse." *Runcorn v. Shearer Lumber Products, Inc.,* 107 Idaho 389, 394, 690 P.2d 324, 329 (1984). *See also Coddington v. City of Lewiston,* 96 Idaho 135, 525 P.2d 330 (1974). In *Runcorn* we were urged to adopt the view of *Rodriguez v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974), that a claim for loss of consortium is completely separate and distinct from the physically injured spouse. The plaintiffs in *Runcorn* urged this view in order to strengthen their position that the spouse's damages for loss of consortium should not be reduced by the percentage of comparative negligence attributable to the physically injured person. We refused to adopt such a view in *Runcorn,* and we again refuse this view which Thompson asserts in order to strengthen his position that the claim for loss of consortium generates a separate claim liability limit under the policy. However, we do not find the derivative nature of a claim for loss of consortium to be dispositive of the present case. Regardless of the nature of a claim for loss of consortium under Idaho law, the insurance policy would be free to include or not include the spouse's claim for loss of consortium with the patient's claim for physical injuries for purposes of the "each claim" liability limit.

Therefore, the ultimate issue is whether or not both claims are "for loss resulting from any one claim or suit or all claims or suits first made during the policy year because of injury to ... any one person," as defined by the policy language. We affirm the trial court's holding that the policy language is clear and unambiguous as a matter of law when applied to the facts of this case.

It is clear that both claims were "claims or suits first made during the policy year because of injury to ... one person," the patient. The patient was "any one person" who was allegedly "injured," and the spouse's claim for loss of consortium was "first made during the policy year because of injury to" the patient. Without the patient's alleged injury, the spouse's damage claim for loss of consortium would be nonexistent and would never have been made. Therefore, the claim for loss of consortium was made "because of injury to" the patient. The loss of consortium claim is a damage claim resulting from injury to the patient, and it falls within the policy definition of the "each claim" liability limit. The insurance policy "must be construed and understood in its plain, ordinary and proper sense according to the meaning as determined from the plain wording thereof." *Clark v. St. Paul Property & Liability Ins. Co.,* 102 Idaho 756, 758, 639 P.2d 454, 456 (1981). Even in California, which supposedly follows the "separate and distinct" view of a claim for loss of consortium, it has been held that a loss of consortium claim resulting from injury to another person does not trigger a second liability limitation for the damages. *United Services Automobile Ass'n v. Warner,* 64 Cal. App.3d 957, 135 Cal.Rptr. 34 (1977). Although the ultimate determination in every case would depend upon the particular policy language, other jurisdictions and authorities are in accord with this position under analogous circumstances. *E.g., Smith v. State Farm Mut. Automobile Ins. Co.,* 252 Ark. 57, 477 S.W.2d 186 (1972); *Travelers Indemnity Co. v. Cornelson,* 272 Md. 48, 321 A.2d 149 (1974); *Williams v. Standard Accident Ins. Co. of Detroit,* 188 F.2d 206 (5th Cir.1951); 8 Appleman on Insurance, § 4893, p. 60 (1981).

· We find Thompson's other arguments and interpretations asserted in an attempt to create an ambiguity out of the plain language of the policy to be without merit.

The judgment of the trial court is affirmed. Costs to appellant. No attorney fees.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, Justice concurring specially:

I concur in the affirmance of the trial court based on the majority analysis of the language of the insurance policy.

BISTLINE, Justice, dissenting.

The reasoning of the majority is neither persuasive nor acceptable. True, the nature of a loss of consortium claim has been said to be derivative. *Runcorn v. Shearer Lumber Products, Inc.*, 107 Idaho 389, 394, 690 P.2d 324, 329 (1984), where such issue was considered in the context of a worker's compensation claim. The exact language there was this: "The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse." *Id.*

The claim is derivative only in that it does not arise out of injury to one's self. In that sense it is not first party injury; obviously a person not possessed of a spouse will never suffer a loss of consortium. A better choice of words in *Runcorn* would have been to observe that having a spouse is a condition precedent to suffering the injury which flows from injury inflicted on that spouse which impinges upon the right of consortium. Thus, reduced to bare simplicity, there will be no loss of consortium claim without there first having been a personal injury to the spouse which injury impinges upon the right of consortium. So viewed it is readily seen that a loss of consortium is a separate and independent injury from that of the personally injured spouse. For instance, if a husband's injury is caused by the negligence of another, while *he* may assert a damage claim for *his* personal injuries, he cannot

assert his wife's loss of consortium claim because that claim is for the non-personal-injury to her. Likewise, his wife cannot assert a claim for his loss of consortium. Although courts frequently speak in terms of the loss of consortium claim being derivative, *it is actually the injury which is derivative.* The harm caused in a loss of consortium claim is the interference with a spouse's legal right to companionship, affection, support and sexual relations with his or her spouse. This derivative injury, to properly use that term, gives rise to a claim or cause of action which is wholly separate and distinct from that of the negligently injured spouse. In a given case, the spouse suffering the personal injury at the hands of a third party might for some reason choose to not bring suit. The spouse suffering loss of consortium is not disabled from proceeding against the tortfeasor.

It is not difficult to understand why the majority is confused, but it is difficult to comprehend why that state of perplexity is not dissipated by that which other courts have reasoned. In *Rodriquez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal. Rptr. 765, 778, 525 P.2d 669, 684 (1974), the court, citing an earlier California opinion, clarified the distinction:

"The difficulty I find with these analyses is their failure to distinguish the injured husband's personal loss from the separate, distinct and legally recognized loss suffered by his wife. Take the case of a husband who suffers an incapacitating injury to his reproductive organs. In his personal injury suit it is clear that his damages are predicated upon *his* physical injury which precludes him from copulation, procreation, and an otherwise full enjoyment of his marital state. However, the wife's loss is just as real as it is distinct. She can no longer enjoy *her* legally sanctioned and morally proper privilege of copulation or procreation, and is otherwise deprived of *her* full enjoyment of her marital state. These are *her* rights, not his." (Italics in original.) (*Yonner v. Adams* (1961), supra, 3

Storey 229, 53 Del. 229, 167 A.2d 717, 728.)

The California court's analysis of this problem also recognized the procedural problems inherent in loss of consortium claims, especially with regard to distinguishing the claims to ascertain damages so as to avoid double recovery:

"The key to the present problem can thus be seen as procedural." (*Diaz v. Eli Lilly and Company* (Mass.1973), supra, [364 Mass. 153] 302 N.E.2d 555, 561.) All that is necessary to avoid double recovery "is to insure that each element of the damages is separate and distinct from all the others" (*City of Glendale v. Bradshaw* (1972), supra, 108 Ariz. 582, 503 P.2d 803, 805), and in particular that the wife's recovery does not include any damages for loss of her husband's financial support or other items for which *he* is primarily entitled to be compensated. There is no mystery about how this can be accomplished. The cases since *Deshotel* [*v. Atchison*, 50 Cal.2d 664, 328 P.2d 449 (1958)] have achieved the desired result either by requiring that such items be carefully identified at trial by appropriate rulings and the jury be instructed to exclude them from any verdict that may be rendered for the wife, or by directing that any such items be deducted by the trial court from the wife's verdict if it appears they figured therein.

*Rodriguez, supra,* 115 Cal.Rptr. at 778–79, 525 P.2d at 684–85 (footnotes omitted) (emphasis original).

Further, the California court recognized that the loss of consortium claim is a separate and distinct claim or cause of action and any procedural difficulties could be cured under the statutory scheme:

The *Deshotel* court spoke of recovery by the wife "in a separate action" (50 Cal.2d at p. 667, 328 P.2d 449). But any dangers implicit in such an action can be avoided by joinder. On this point the cases are almost equally divided: in six jurisdictions it has been held that the wife *must* join her cause of action for loss of consortium for trial with her husband's cause of action for negligence, while in five others that view has been rejected as too rigid, and joinder, although strongly encouraged, is not mandatory. The latter position accords with the current California statutory scheme. Perhaps the best reasoned opinion on the subject is *Diaz v. Eli Lilly and Company* (Mass.1973), supra, 302 N.E.2d 555. The court there explained (at pp. 560–561): "As a practical matter, the consortium claim, when asserted at all, will usually be presented together with the negligence claim for the physical injuries, husband and wife joining in the same action. Such joinder is of course permitted and invited by the procedural rules. When, perchance, separate actions have been brought, the defendant (or plaintiffs in the actions) would normally be entitled to have them consolidated for trial. Further, we think the defendant could ordinarily insist, if he considered it to his advantage, that the other spouse be joined in the main negligence action so that a possible claim for loss of consortium should not be outstanding when the negligence claim was disposed of, leaving a possibility of duplicating recoveries." (Fns. omitted.)

*Rodriguez, supra,* 115 Cal.Rptr. at 779, 525 P.2d at 685 (footnotes omitted).

Likewise, Idaho has statutory provisions on joinder of claims which provide a defendant with the opportunity to consolidate the separate claims of the husband and wife. I.R. C.P. 19(a)(1) and 20(a).

The California court concluded that "each spouse has a separate cause of action for loss of consortium, as defined herein, caused by the negligence or intentional injury to the other spouse by a third party." *Rodriguez, supra,* 115 Cal.Rptr. at 780, 525 P.2d at 686. Recognizing that this rule might work a hardship on pending cases the court limited application of the rule to future loss of consortium cases:

The solution of the majority of the other courts, which we adopt, is simply to declare that for reasons of fairness

and sound administration a spouse will not be permitted to initiate an action for loss of consortium—even though not barred by the statute of limitations—when the action of the other spouse for the negligent or intentional injury giving rise to such loss was concluded by settlement or judgment prior to the effective date of this decision.

*Rodriguez, supra,* 115 Cal.Rptr. at 780, 525 P.2d at 686.

By implication the California court recognized that in the future, settlement or judgment for one spouse would not preclude the loss of consortium claim by the other spouse.

The analysis of the California court soundly separates the claims of the husband and wife, recognizing that each suffers a separate and distinct injury. Further, the reasoning by the California court that the action of one spouse, through settlement, judgment, or refusal to file suit, does not preclude the other spouse from pursuing his or her remedies is both logical and sound.

The majority uses *Runcorn, supra,* as the foundation for its decision today. I am inclined to agree that there may be good policy reasons for limiting the liability of an employer or the employer's surety to that of the injured worker because of the employment context of the injury, and because of the purpose of the worker's compensation law, which is to compensate workers for injuries incurred at the workplace. The entire purpose behind the Worker's Compensation Act was to provide benefits to those employees injured while making a profit for the employer. However, these policy reasons do not hold true for personal injury cases such as the one before us today. In a negligence case the purpose of the law is to compensate all of the persons who have suffered a loss because of a negligent tort-feasor. The majority has completely failed to recognize and address this distinction. Hence, I find the majority's reliance on *Runcorn,* a worker's compensation case, totally and sadly misplaced.

Having decided the claim for loss of consortium is separate and distinct from the claim of the negligently injured spouse, it is clear to me that these two claims fall under the "annual aggregate" limit of the professional liability policy issued to Dr. Thompson by St. Paul. The language in dispute is repeated for convenience:

The limit of liability in the Declarations as applicable to "each claim" is the limit of the Company's liability for loss resulting from any one claim or suit or all claims or suits first made during the policy year because of injury to or death of any one person, subject, however, to the *following special limit of liability.*

R., Vol. 1, p. 9.

St. Paul argues that the district court ruling that the insurance contract envisions that all claims arising from *bodily* injury to any one person fall within the "each claim" policy amount of $150,000. St. Paul concedes that the wife sustained bodily injury, and that the husband sustained injury in the form of loss of consortium as a result of his wife's bodily injury. Focusing on the language of the policy quoted above, St. Paul argues that the policy contemplated multiple suits arising from injury to one person, and these multiple suits all fall within the "each claim" limit on liability.

St. Paul contends the great weight of authority supports this position that multiple claims arising from injury to one person invoke the per person limit of an insurance policy. I have reviewed the authority involving construction of insurance policy language concerning limits of liability cited by the respondent and I am not persuaded we should attach to those cases the weight which St. Paul urges we should. Although St. Paul cites numerous authority for the proposition that the loss of consortium claim of the husband does not generate a separate policy limit of liability, my review shows that the policy language contained in the policies in dispute in those cases is far more detailed and carefully worded than the language of the policy before us today. Specifically, the limitation of liability language construed refers to limits of liability

due to *bodily* injury to any one person.[1] Furthermore, in several of the cases cited by St. Paul, the policy being construed contained specific language that damages arising from loss of consortium due to bodily injury of one's spouse were contained in the per claim limit of liability of a policy. *Hutton, supra;* and *Williams, supra.* In cases such as these, where the insurer has carefully set forth the limits of liability for which the company would be responsible, I would not say that those courts were incorrect in holding that loss of consortium claims arising from bodily injury to one's spouse fell within the per claim limit of liability.

However, the policy language before us does not limit the insurer's liability to "bodily" injury nor does it define the term injury to include damages from loss of care, services or consortium arising from bodily injury to any person. Rather, the language in dispute refers only to "injury" with no limiting language. St. Paul's interpretation requires us to read into the contract language which is not there. This court has repeatedly held that it will not do so. Because insurance policies are contracts of adhesion, not subject to negotiation between the parties, they must be construed most strongly against the insurer. *Moss v. Mid-American Fire and Marine Ins.,* 103 Idaho 298, 300, 647 P.2d 754, 756 (1982); *Abbie Uriguen Olds. Buick, Inc. v. United States Fire Ins. Co.,* 95 Idaho 501, 511 P.2d 783 (1973); *Stephens v. New Hampshire Ins. Co.,* 92 Idaho 537, 447 P.2d 14 (1968).

In Idaho the rule of construction of insurance contracts where policy language

---

1. *See New Hampshire Ins. Co. v. Bisson,* 122 N.H. 747, 449 A.2d 1226 (N.H.1982); *Gass v. Carducci,* 52 Ill.App.2d 394, 202 N.Ed.2d 73 (1964). Furthermore, several cases construed policies which had explicitly limited liability to bodily injury language. Policy language is quoted below:

"Sec. 3 ... Liability hereunder shall be limited to $100,000 per person and $300,000 for any single occurrence for *bodily* injury or death and to $10,000 for any single occurrence for injury to or destruction of property." *City of Austin v. Cooksey,* 570 S.W.2d 386, 387 (1978) (emphasis added).

"The limit of *bodily injury* liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all *damages* because of *bodily injury* sustained by one person as the result of any one *occurrence;* but subject to the above provision respecting 'each person,' the total liability of the company for all *damages* because of *bodily injury* sustained by two or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the declarations as applicable to 'each *occurrence.'"* (Emphasis original.) *Travelers Indemnity Co. v. Cornelsen,* 272 Md. 48, 321 A.2d 149, 150 (1974).

"A. The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the Company's liability for all damages, including damages for care and loss of services, arising out of *bodily* injury to, sickness, disease, or death of one person in any one occurrence; * * *." *Hutton v. Martin,* 43 Wash.2d 574, 262 P.2d 202, 204 (1953) (emphasis added).

"1. Limits of liability—Coverage A. * * * The limit of *bodily* injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of *bodily* injury including death at any time resulting therefrom, sustained by one person in any one accident; the limit of such liability stated in the declarations as applicable to 'each accident' is, subject to the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, including death at any time resulting therefrom, sustained by two or more persons in any one accident." *Williams v. Standard Acc. Ins. Co. of Detroit, Michigan,* 188 F.2d 206, 207 n. 1 (5th Cir.1951) (emphasis added).

"Limits of Liability—Always provided that the company's liability under this policy whether it be issued in the name of one assured or of more than one assured shall be limited in the following manner:

"(1) For all claims arising out of *bodily* injuries or death under agreement I, the limit of the company's liability on account of *bodily* injuries to or the death of one person shall be the limit expressed for 'one person' in item J of schedule, and, subject to the same limit for each person, the company's total limit of liability on account of *bodily* injuries to or the death of more than one person as the result of any one accident, shall be the limit expressed for 'one accident' in item J of schedule, but the said limits apply to each automobile insured hereunder." *Perkins v. Fireman's Fund Indemnity Co.,* 44 Cal.App.2d 427, 112 P.2d 670, 671 (1941) (emphasis added).

can have two meanings was clarified in *Foremost Insurance Co. v. Putzier,* 102 Idaho 138, 142, 627 P.2d 317, 321 (1981), wherein reliance was placed on the earlier opinion of Justice Donaldson in *Casey v. Highlands Insurance Co.,* 100 Idaho 505, 600 P.2d 1387 (1979). Quoting from the *Foremost* opinion:

We note at the outset that the doctrine of reasonable expectations has since been declared not to be the law in Idaho. *Foremost Insurance Co. v. Putzier,* 100 Idaho 883, 606 P.2d 987 (1980); *Casey v. Highlands Insurance Co.,* 100 Idaho 505, 600 P.2d 1387 (1980). Rather, where there is an ambiguity in an insurance contract, special rules of construction apply to protect the insured. *Casey v. Highlands, supra.* Under these special rules, insurance policies are to be construed most liberally in favor of recovery, with all ambiguities being resolved in favor of the insured. *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co.,* 95 Idaho 501, 511 P.2d 783 (1973). "Where language may be given two meanings, one of which permits recovery and the other does not, it is to be given the construction most favorable to the insured." *Shield v. Hiram C. Gardner, Inc.,* 92 Idaho 423, 427, 444 P.2d 38, 42 (1968). *Accord, Erikson v. Nationwide Mutual Insurance Co.,* 97 Idaho 288, 543 P.2d 841 (1975).

Moreover, although the doctrine of reasonable expectations is not the law in Idaho, there is the closely analogous rule of contract construction pointed out by. Justice Donaldson in his opinion in *Corgatelli v. Globe Life & Accident Co.,* 96 Idaho 616, 533 P.2d 737 (1975), wherein, citing *Shields v. Hiram C. Gardner, Inc., supra,* he wrote:

"[t]he doctrine of probability or reasonableness has long been a rule of construction geared toward ascertaining intent in situations of ambiguity. The standard to be applied is what a reasonable person in the position of the insured *would have understood* the language to mean." 96 Idaho at 622,

533 P.2d at 743. (Donaldson, J., dissenting.) (Emphasis added.)

Under this rule of construction, which utilizes an objective standard and which is used in the case of ambiguously written insurance policies, to effectuate the intent of the parties, the test is what a reasonable person in the position of the insured would have understood the language of the contract to mean. This test is not necessarily conclusive as to the intent of the parties, but is only one rule of construction to be considered in construing an ambiguous contract. This standard is, of course, in accord with the general rule of construing insurance contracts against those who write them. *See, e.g., Dunford v. United of Omaha,* 95 Idaho 282, 506 P.2d 1355 (1973). (Footnotes omitted.)

Furthermore, exclusions of coverage must be strictly construed in favor of the insured. *Moss, supra; Hahn v. Alaska Title Guaranty Co.,* 557 P.2d 143 (Alaska 1976). We should not read into this policy that language which the insurer failed to provide. Had the insurer wished to limit its liability to all claims arising from *bodily* injury to one person it could easily have done so. The majority today provides the insurance company with the language it failed to include in its policy. The majority today ignores previous well-settled rules of construction for insurance policy language to defeat the claim of the insured. Result: the insured, Dr. Thompson, paid for protection he did not get; St. Paul reaps a windfall; the trial bench and bar have a result-oriented opinion which is at odds with established precedent. I am reminded that:

The most intolerable evil, however, under which we have lived for the past twenty-five years, has been the changing and shifting character of our judicial decisions, by which we have been deprived of the inestimable benefit of judicial precedents as a safeguard to our rights of person and property.