Gary GROVES and Kathy Groves, husband and wife, Plaintiffs,

v.

FIREBIRD RACEWAY, INC., an Idaho corporation; the National Hot Rod Association, a California corporation; and John Does I through V, Defendants.

Civ. No. 93–0310–S–HLR.

United States District Court, D. Idaho.

April 26, 1994.

Allen R. Derr, Boise, ID, Edward T. Wells, Robert J. Derbry & Associates, Salt Lake City, UT, for plaintiffs.

Tom Lopez, Quane Smith Howard & Hull, Boise, ID, for defendants Firebird Raceway, Inc. and the Nat. Hot Rod Ass'n.

## ORDER GRANTING SUMMARY JUDGMENT AND DISMISSING ACTION

RYAN, Senior District Judge.

### I. FACTS AND PROCEDURE

The plaintiffs, Gary and Kathy Groves, filed the above-entitled action on August 12, 1993, against the defendants, Firebird Raceway, Inc., the National Hot Rod Association, and various John Doe defendants. Briefly, the facts of the case are as follows.

The plaintiffs reside in the State of Utah. Gary Groves is in the business of building and racing cars. Firebird Raceway, Inc., is an Idaho corporation which owns and operates the Firebird Raceway near Emmett, Idaho. Firebird Raceway conducts races sanctioned by the National Hot Rod Association, a California corporation. The court has jurisdiction over this matter based on complete diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

On or about August 13, 1992,[1] Gary Groves entered a car, owned and operated by him, in the Pepsi Night Fire National Races held at the Firebird Raceway. This event was sanctioned by the National Hot Rod Association. Gary Groves paid an entry fee as a prerequisite to being allowed to race in the event. In addition, as a further prerequisite to participation in the event, Gary Groves signed a Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement (hereinafter "release").

During the racing event on August 13, 1992, Gary Groves lost control of his car, which then hit a guardrail, flipped, and caught on fire. The plaintiffs do not contend that the defendants in any way caused the crash. Employees of Firebird Raceway responded to the accident with a fire truck and put out the fire. As a result of the accident, Gary Groves suffered serious burns over 35 percent of his body. Since the accident, Gary Groves has incurred substantial medical costs.

In their Complaint, the plaintiffs allege two causes of action. Their first cause of action is for negligence. Specifically, the plaintiffs allege that the defendants had a duty to provide adequate firefighting equipment and properly trained firefighting personnel at the race track. They further allege that the firefighting personnel failed to respond promptly to the fire, and when they did respond, they were unable to extinguish the fire quickly enough due to lack of proper training and equipment. The plaintiffs contend that the delay caused the fireproof safety gear worn by Gary Groves to fail, causing him to suffer burns over 35 percent of his body. Thus, the plaintiffs allege that the negligence of the defendants in failing to provide adequate and proper firefighting equipment and personnel proximately caused the injuries suffered by Gary Groves, and that these injuries have resulted in extensive damages to both plaintiffs.

In the second cause of action, Plaintiff Kathy Groves claims that the negligence of the defendants caused her to be denied the

---

1. In their pleadings, all of the parties alternatively refer to the accident date as either August 13 or 14, 1992.

care and companionship of Gary Groves. For this loss of consortium, Kathy Groves seeks damages in the sum of $1,000,000.00.

On January 7, 1994, the defendants filed a motion for summary judgment on both causes of action. This motion has been fully briefed, and a hearing was held on April 20, 1994. Therefore, this motion is now ripe for decision.

## II. ANALYSIS

### A. The Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323, 106 S.Ct. at 2552.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975) (quoting First Nat'l Bank v. Cities Serv. Co., Inc., 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. See e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

### B. Defendants' Motion for Summary Judgment

■ The defendants have moved for summary judgment on the grounds that the release signed by Gary Groves prior to, and as a prerequisite to, his participation in the race on August 13, 1992, acts as a complete bar to the present suit. The release signed by Gary Groves provided as follows:

IN CONSIDERATION of being permitted to compete, officiate, observe, work for, or participate in any way in the EVENT(S) or being permitted to enter for any purpose any RESTRICTED AREA (defined as any area requiring special authorization, credentials, or permission to enter or any area to which admission by the general public is restricted or prohibited), EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin:

---

2. See also Rule 56(e), which provides in part:
   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
Fed.R.Civ.P. 56(e).

1. Acknowledges, agrees, and represents that he has or will immediately upon entering any of such RESTRICTED AREAS, and will continuously thereafter, inspect the RESTRICTED AREAS which he enters and he further agrees and warrants that, if at any time, he is in or about RESTRICTED AREAS and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the RESTRICTED AREAS and/or refuse to participate further in the EVENT(s).

2. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoters, participants, racing associations, sanctioning organizations or any subdivision thereof, track operators, track owners, officials, car owners, drivers, pit crews, rescue personnel, any persons in any RESTRICTED AREA, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the EVENT(S), premises and event inspectors, surveyors, underwriters, consultants and others who give recommendations, directions, or instructions or engage in risk evaluation or loss control activities regarding the premises or EVENTS(S) and each of them, their directors, officers, agents and employees, all for the purposes herein referenced to as "Releasees," FROM ALL LIABILITY TO THE UNDERSIGNED, his personal representatives, assigns, heirs, and next of kin FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

3. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees and each of them FROM ANY LOSS, LIABILITY, DAMAGE, OR COST they may incur arising out of or related to the EVENT(S) WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

4. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE arising out of or related to the EVENT(S) whether caused by the NEGLIGENCE OF RELEASEES or otherwise.

5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. Each of THE UNDERSIGNED also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

6. HEREBY agrees that this Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS and is intended to be as broad and inclusive as is permitted by the laws of the Province or State in which the Event(s) is/are conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

*See* Lopez Aff.Supp. of Defs.' Mot. for Summ. J., filed Jan. 7, 1994, Ex. 2 (Release & Waiver of Liability, Assumption of Risk & Indemnity Agreement).

The court finds that there are no genuine issues of material fact which would preclude the court from ruling in favor of the defendants as a matter of law. Based on the clear and comprehensive language of the release, and the line of Idaho cases cited by the

defendants,[3] the court finds that the defendants are entitled to summary judgment. In order to provide a complete record, the court will address each the primary points of contention raised by the plaintiffs in their response memorandum and affidavits.

First, the plaintiffs contend that the release is unenforceable because it cannot abrogate the standard of care required of the defendants' trade or profession. The court is not persuaded. The very purpose of a release of this nature is to immunize the entities and individuals hosting dangerous activities from being held liable for negligent conduct or failure to meet any specified standard of care. While the defendants may have developed their own standards and guidelines, or the auto racing industry may have formulated standards regarding track maintenance and race sponsorship, the release signed by Gary Groves shields the defendants from liability for negligent acts regardless of whether they adhered to any such standards or guidelines.

If a person wishes to participate in the highly dangerous sport of auto racing, he or she is free to do so. However, for the defendants to be able to operate, each participant is required to sign the release set forth above, and agree beforehand not to hold the operators of the premises or the association sponsoring the event liable for any negligent acts on their part. With the signing of the release, there is no relevant standard of care to be violated and no subsequent cause of action for negligence may be maintained.

Second, the plaintiffs contend that the release does not cover the specific acts complained of by them. The plaintiffs base their causes of action on the defendants' alleged failure to provide adequate and/or proper firefighting equipment and personnel, and their allegation that the rescue personnel failed to put out the fire and extricate Gary Groves quickly enough.

The release could not be any more clear on this point. The release specifically states that Gary Groves, as the undersigned, acknowledged that "INJURIES RECEIVED MAY BE COMPOUNDED OR IN- CREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES." *Id.* The release further states that Gary Groves agreed that the release "extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS...." *Id.*

The release clearly extends to the specific acts complained of by the plaintiffs. The plaintiffs must also realize that perhaps the greatest source of potential liability for an operator of a race track or sponsor of a racing event arises when a participant loses control and crashes his own vehicle, forcing the track operator to provide rescue services. An auto racing release would be meaningless if it did not extend to rescue personnel, operations, and procedures.

Third, the plaintiffs contend that the release in this case is unenforceable because it falls within one of the two exceptions to enforcement of releases under Idaho law. In *Rawlings v. Layne & Bowler Pump Co.,* 93 Idaho 496, 465 P.2d 107 (1970), the appellant argued that exculpatory releases themselves violate public policy and should not be enforced. The Idaho Supreme Court disagreed.

> Appellant contends that it is against public policy to allow a person to contract away his legal rights and remedies for future negligence. This rule is not absolute, and in the opinion of this Court is more realistically viewed as an exception rather than the general rule which prevails throughout the majority of American jurisdictions. Freedom of contract is a fundamental concept underlying the law of contracts and is an essential element of the free enterprise system.

*Id.* at 499, 465 P.2d at 110. The court went on to hold that "express agreements exempting one of the parties for negligence are to be sustained except where: (1) one party is at an obvious disadvantage in bargaining power; (2) a public duty is involved (public

---

**3.** *See, for example, Rawlings v. Layne & Bowler Pump Co.,* 93 Idaho 496, 465 P.2d 107 (1970); *Holve v. Draper,* 95 Idaho 193, 505 P.2d 1265 (1973); *Anderson & Nafziger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 595 P.2d 709 (1979); *Lee v. Sun Valley Co.,* 107 Idaho 976, 695 P.2d 361 (1985); *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985).

utility companies, common carriers)." *Id.* at 499–500, 465 P.2d at 110–11.[4]

■ Thus, under Idaho law, releases such as the one involved in the case at hand are enforceable unless they violate public policy in one of two ways: (1) one party is in an unequal bargaining position; or (2) a public duty is involved. The plaintiffs do not contend that Gary Groves, being a person who makes his living building and racing cars, was at an obvious disadvantage in bargaining power when he signed the release. Rather the plaintiffs contend that a public duty was involved.

■ The court in *Rawlings* limited the public duty exception to instances where either public utilities or common carriers are involved. In *Lee v. Sun Valley*, 107 Idaho 976, 695 P.2d 361 (1984), the Idaho Supreme Court extended the public duty exception to instances in which a statute imposes duties upon a party or parties.

> [W]here the legislature has addressed the rights and duties pertaining to personal injuries arising out of the relationship between two groups, *i.e.,* employers/employees, outfitters and guides/participants, and has granted limited liability to one group in exchange for adherence to specific duties, then such duties become a "public duty" within the exception to the general rule validating exculpatory contracts. Therefore, while the agreement between Sun Valley and plaintiff does absolve Sun Valley from common law liabilities, it does not absolve Sun Valley from liability for possible violation of the public duty imposed by I.C. § 6–1204.

*Id.* at 979, 695 P.2d at 364.

The case at hand does not involve public utilities or common carriers. Furthermore, the Idaho legislature has not chosen to regulate the rights and duties pertaining to personal injuries arising out of the relationship between race track operators and race sponsors/race participants. There are no Idaho statutes regulating race track operators or sponsors. Accordingly, there is no public duty involved in this case, and neither exception to enforcement of releases recognized under Idaho law applies.

Fourth, the plaintiffs contend that Gary Groves did not understand or intend to release the defendants from liability for potential injuries arising out of negligent fire and rescue operations when he signed the release. However, the release clearly states in plain language that Gary Groves, as the undersigned, acknowledged that "INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES." *See* Lopez Aff.Supp. of Defs.' Mot. for Summ.J., filed Jan. 7, 1994, Ex. 2 (Release & Waiver of Liability, Assumption of Risk & Indemnity Agreement). The release further states that Gary Groves agreed that the release "extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS...." *Id.* In addition, the final paragraph of the release signed by Gary Groves provided as follows:

> I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

*Id.* Accordingly, the court need not consider this point any further.

■ Lastly, although the plaintiffs did not contest this point in their briefing, counsel for the plaintiffs argued at the hearing that even if the court finds that the release bars recovery by Gary Groves, the loss of consortium claim by Kathy Groves is not barred. Plaintiffs contend that the loss of consortium claim is separate and independent of the

---

4. *See also, Lee v. Sun Valley Co.,* 107 Idaho 976, 695 P.2d 361 (1984); *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985).

claims of Gary Groves and is not subject to the defenses to his claim. Plaintiffs also contend that because Kathy Groves did not sign the release, she is not bound by it and her claim is not barred.

In support of these contentions, the plaintiffs rely primarily on a Wisconsin case, *Arnold v. Shawano County Agricultural Society*, 106 Wis.2d 464, 317 N.W.2d 161 (App. 1982).[5] In that case, the Court of Appeals of Wisconsin held:

> A spouse's action for loss of consortium for an injury to the other spouse is a separate cause of action that never belonged to the other spouse.... Accordingly, it is not a cause of action that is "subject to the defenses ... available against the other spouse's cause of action."

*Id.* at 163 (*quoting Schwartz v. City of Milwaukee*, 54 Wis.2d 286, 195 N.W.2d 480, 484 (1972)). The court also held that "[a]s [the wife] did not sign the release, she did not release her separate cause of action." *Id.* at 164.

This court declines to follow the holding in *Arnold,* that a spouse's claim is not barred if he or she did not sign the release. If a release signed by a race participant does not bar the claims of relatives for loss of consortium and/or wrongful death because they did not sign the release, then, on race day, each racer would have to bring his or her spouse, children, parents, siblings, and possibly other relatives and have them sign the release also. If this were required, releases would become hopelessly impracticable; racetrack operators would go out of business; and individuals would no longer be able to participate in auto racing events.

With respect to the nature of a loss of consortium claim, other states have reached conclusions similar to those in *Arnold. See, for example, Huber v. Hovey,* 501 N.W.2d 53 (Iowa 1993); and *Bowen v. Kil–Kare, Inc.,* 63 Ohio St.3d 84, 585 N.E.2d 384 (1992). The law on this question has been summarized as follows:

Where the action for loss of consortium is seen as purely derivative of the original cause of action for the injury, it has been held that once the original cause of action has been released, the action for loss of consortium is also barred. However, the more prevalent view seems to be that the loss of consortium suit is not barred as it is a separate and independent cause of action which is the property of the spouse and cannot be controlled by the injured person. Courts adhering to the latter view will often point out that the injured person is not the agent of his spouse simply because of the marital relationship, and that he therefore has no power to bind his spouse by an agreement to which the spouse was not a party. Consequently, under this view, an action for loss of consortium is seen as derivative only to the extent that the defendant must be proved to have caused the original injury, which in turn caused the spouse to suffer.

Caroll J. Miller, Annotation, *Injured Party's Release of Tortfeasor as Barring Spouse's Action for Loss of Consortium,* 29 A.L.R.4th 1200 (1984).

Regardless of the holding in *Arnold* and other cases, Idaho law has taken an entirely different, though less prevalent, view of a spouse's claim for loss of consortium. In *Runcorn v. Shearer Lumber Products, Inc.,* 107 Idaho 389, 690 P.2d 324 (1984), the Idaho Supreme Court held that a "claim for loss of consortium is a *wholly derivative* cause of action contingent upon a third party's tortious injury to a spouse." *Id.* at 394, 690 P.2d at 329 (emphasis added). In that case, the court held that when a husband's claim is barred against his employer because of the workmen's compensation statute, the wife's claim for loss of consortium is also barred *because of its derivative nature. Id.*[6] Thus, not only is a loss of consortium claim viewed to be a derivative claim, it is also subject to

---

5. The plaintiffs also cited other cases at the hearing which are less supportive of their contentions. *See, for example, Gunning v. General Motors Corp.,* 239 Mont. 104, 779 P.2d 64 (1989); *Bain v. Superior Court,* 148 Ariz. 331, 714 P.2d 824 (1986); and *McGuire v. Sifers,* 235 Kan. 368, 681 P.2d 1025 (1984).

6. Conversely, in *Rosander v. Copco Steel & Engineering Co.,* 429 N.E.2d 990 (Ind.Ct.App.1982), the Court of Appeals of Indiana held that the exclusive remedy provisions of Indiana's workmen's compensation statute does *not* bar a spouse's cause of action for loss of consortium.

the same defenses as the claim or claims of the injured spouse.

The *Runcorn* decision holding loss of consortium to be wholly derivative of and contingent upon the claim of an injured spouse has been affirmed by later Idaho cases.

> In *Runcorn* we were urged to adopt the view of *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974), that a claim for loss of consortium is completely separate and distinct from the physically injured spouse. The plaintiffs in *Runcorn* urged this view in order to strengthen their position that the spouse's damages for loss of consortium should not be reduced by the percentage of comparative negligence attributable to the physically injured person. We refused to adopt such a view in *Runcorn*, and we again refuse this view which Thompson asserts in order to strengthen his position that the claim for loss of consortium generates a separate claim liability limit under the policy.

*Thompson v. St. Paul Fire & Marine Ins. Co.*, 108 Idaho 802, 803, 702 P.2d 840, 841 (1985). In *Thompson*, the Idaho Supreme Court went on to hold that under Idaho law an insurer's liability for a loss of consortium claim is included within the policy limits of liability to the injured spouse. *Id.* Thus, a claim for loss of consortium does not trigger a second claim and a second liability limitation for the damages. *Id. Accord, Buckley v. Orem*, 112 Idaho 117, 123, 730 P.2d 1037, 1043 (Ct.App.1986).

■ Based on the preceding discussion, it is clear that because Gary Groves has no cause of action and no right to recover, it necessarily follows that, under Idaho law, Kathy Groves also has no cause of action and no right to recover. The loss of consortium claim is wholly derivative in nature and is subject to the same defenses.

The court notes that other jurisdictions have also barred loss of consortium claims under such circumstances. For example, in *Conradt v. Four Star Promotions, Inc.*, 45 Wash.App. 847, 728 P.2d 617 (1986), a husband sustained injuries in a demolition derby automobile race. He signed an exculpatory release prior to participating in the race. Both the husband and wife later brought suit against the operators of the racetrack. The court ruled that the husband's claims were barred by the release, and that the wife's claim for loss of consortium was necessarily barred also. The rationale for the decision was as follows:

> No claim for loss of consortium will arise if no tort is committed against the impaired spouse. Here, the injured husband, by signing the release, entered into a contract expressly agreeing to participate in an undertaking posing known risk. He assumed the risk and evidenced that assumption by signing the release. The husband thus previously abandoned the right to complain if an accident occurred. . . . There can be no actionable negligence where no duty was owed to the person injured. . . . Even though loss of consortium has been held a separate, independent, nonderivative action of the deprived spouse and not affected by the negligence of the impaired spouse . . . nevertheless, an element of this cause of action is the "tort committed against the 'impaired' spouse[."] . . . Moreover, a consortium claim by a lone spouse will not be recognized where the underlying tort has been prohibited or abolished.

*Id.* at 621–22 (citations omitted). *See also, Hall v. Gardens Services, Inc.*, 174 Ga.App. 856, 332 S.E.2d 3 (1985) (wife who fell from rented horse had signed a release, precluding her right to recover; therefore, husband's claim for loss of consortium was also barred because right of husband to recover depended upon right of wife to recover).

### III. ORDER

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendants Firebird Raceway, Inc., and The National Hot Rod Association, on January 7, 1994, should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that this action should be, and is hereby, DISMISSED.