730 P.2d 1037

**Kelly BUCKLEY and Betsy Buckley, husband and wife, Plaintiffs-Counter-defendants-Respondents,**

v.

**Charles OREM and Donna Orem, husband and wife, Defendants-Cross Defendants,**

and

**Nationwide Mutual Insurance Company, Defendant-Counter-claimant-Cross Claimant-Appellant.**

No. 15862.

Court of Appeals of Idaho.

Dec. 19, 1986.

John T. Hawley, Jr., and Don A. Olowinski of Hawley, Troxell, Ennis & Hawley, Boise, for defendant-counter-claimant-cross claimant-appellant.

Steven K. Ricks of Ricks & Ramey, Boise, for plaintiffs-counter-defendants-respondents.

SWANSTROM, Judge.

In this appeal we are asked to determine how much an insurance company must pay under its liability policy where its insured caused bodily injuries to both a husband and his wife, but the "lump sum" verdict in

favor of the couple did not specify the amount of damages awarded for each spouse and the husband's damages alone could have exceeded the $100,000 "per person" limit of the policy. The district court held that an insurance company must intervene in the action against its insured to timely seek apportionment of damages for each spouse if the company desires apportionment. The court ruled Nationwide liable for the entire judgment. We vacate the order and we remand.

Nationwide Mutual Fire Insurance Company issued an automobile insurance policy to Charles and Donna Orem. Also insured was the Orems' minor son. During the policy period the son was involved in an accident with the plaintiffs, Kelly and Betsy Buckley. Kelly's injuries were extensive. His medical expenses alone amounted to nearly $31,000. Betsy's injuries were relatively minor. The Orems admitted liability and a jury trial was held solely on the issue of damages. The jury returned a special verdict awarding a lump sum of $115,000 for the "total amount of damages ... sustained by Kelly and Betsy Buckley" and $10,000 to Betsy Buckley for loss of consortium due to her husband's injuries. A judgment for $125,000 was entered against the Orems.[1]

The Orems' post-trial motions, including a request that the district judge allocate the verdict since the jury did not, were denied on July 25, 1983. The Orems attempted to appeal these rulings, but their appeal was untimely and they later stipulated to dismissal of the appeal with prejudice. In the meantime, before the Orems filed their appeal, Nationwide moved to intervene. After allowing intervention, the district court, on cross-motions for summary judgment, ruled that Nationwide was liable for the full $125,000 judgment plus costs, interest and attorney fees. Nation-

wide appeals contending: (1) that its liability is limited to the per person liability coverage of the policy; (2) that it is not liable for interest on the judgment; and (3) that the court erred in awarding attorney fees under I.C. § 41–1839.

It has been argued to us that Nationwide is now precluded from contesting full liability on the judgment. The Buckleys contend that Nationwide is simply attempting to relitigate the trial court's failure to apportion the verdict. Because the Orems' appeal should have addressed this issue and because that appeal has been dismissed, the Buckleys argue that finality of the rulings should not be circumvented through this appeal by Nationwide. The argument misses the mark. Nationwide does not seek to clarify or alter the final judgment against the Orems, but rather to have its own contract liability on the judgment, as it stands, determined. The precise issue is the extent of Nationwide's liability under its insurance contract to pay the final judgment against the Orems for unapportioned damages. This issue was not decided in the damages trial and Nationwide is not precluded from raising it first in intervention, and now on appeal from the adverse summary judgment. We now turn to that question.

## I

Nationwide's liability is controlled by the policy issued to the Orems. The policy "LIMITS OF PAYMENT" section stated in part: *"Our* obligation to pay *property damage* or *bodily injury* liability losses is limited to the amounts per person and per occurrence in the attached Declarations."* (Emphasis original.) The limits stated for bodily injury liability are $100,000 per person and $300,000 per occurrence. Nationwide's liability for bodily injuries *to any one person* is plainly limited to $100,000

---

1. The judgment for $125,000 was entered against Charles and Donna Orem and against their minor son who was the operator of the vehicle involved in the accident. Later, the district judge ruled that the parents' liability, as owners of the vehicle, was limited to a maximum of $50,000 for all injuries suffered by Kelly and Betsy Buckley and to a maximum of

$15,000 for damages to the Buckleys' automobile, under I.C. § 49–1404. As a result of Nationwide's payment of the property damage and $100,000 for the Buckleys' injuries, Charles and Donna Orems' liability to the Buckleys has been discharged. Only the son remains liable for payment of the balance of the $125,000 judgment.

even though two persons were injured in one occurrence. An insurer is free to limit its contractual liability as long as the limitation is clear and precise and does not contravene public policy. *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 701 P.2d 217 (1985). The provision in the Nationwide policy, common in automobile insurance policies, does not offend public policy, and is unambiguous.

Unfortunately, that portion of the verdict awarding $115,000 damages for bodily injuries combines the awards for Kelly and Betsy Buckley. Before the jury retired to commence its deliberations counsel had two opportunities to discuss the form of the verdict with the court. The Buckleys' counsel was willing to have the verdict contain a separate blank for the wife's damages for loss of consortium but he "strenuously" objected to the court giving the jury a verdict form which otherwise segregated the husband's damages from those of the wife. The Orems' counsel, on the other hand, had requested a verdict form which contained blanks for each category of possible damages and separated the husband's damages from those of the wife. However, when the court showed counsel the form of the verdict it had prepared—along the lines requested by the Buckleys—the Orems made only a general objection. In response to the court's inquiry about the reason for the objection, counsel said only that "the issues are such that they should be divisible as far as Kelly and Betsy's injuries on the first [verdict] question."

The following day just before the jury returned to the courtroom to announce its verdict, the Orems requested that, if the verdict was over $100,000, the court instruct the jury "to then allocate between damages for Kelly Buckley and damages for Betsy Buckley." Counsel pointed to I.R.C.P. 49(a)[2] and to the need for the Orems to preserve their rights concerning an offer of judgment previously made by them. The court responded that the Orems should have made their objection to the verdict form more clear and should have made their request for special findings under Rule 49 before the jury retired. The court suggested that the Orems still had the opportunity, under Rule 49, to ask the court to allocate the verdict later, if necessary. When the request was made later, by a post-trial motion, it was opposed by the Buckleys and the court declined to allocate the $115,000 part of the verdict between Kelly and Betsy.

Nationwide argues that because the verdict possibly, indeed likely, contains damages exceeding $100,000 for Kelly, its liability is limited to $100,000 under the policy. Of course, because the verdict did not allow the jury to separately show each spouse's damages, Nationwide is unable to prove its allegation. Therefore, it is readily apparent that if Nationwide has the burden to show that the damages awarded to the husband exceeded the per person limit of the policy it cannot meet that burden with certainty and it will be liable for the entire $125,000. On the other hand, if the Buckleys have the burden to show that the total damages awarded for the husband's injuries are *within* the per person limit of the policy, the Buckleys cannot meet this burden and Nationwide's liability to its insured—hence, also its liability to the Buckleys—is limited to $100,000 for bodily injuries sustained in the accident.

**2.** Rule 49(a) states:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

The district judge ruled that "where the husband and wife each are injured and seek damages, the insurance company must intervene and seek apportionment between them, if it desires it." This burden to *seek* apportionment was, in the court's view, not met. Nationwide sought intervention only after judgment was rendered on the verdict, and the Orems' counsel, after submitting a proposed allocated verdict, did not make clear the basis for objection to the verdict used. It appears that both counsel and the court assumed it was purely a matter of the court's discretion under Rule 49(a) whether a "special verdict" form would be used.[3]

The Buckleys cite several cases to support placement of the burden of allocation on the insurer, including two cases relied on by the trial court. In *Foster v. Giroux*, 8 Wash.App. 398, 506 P.2d 897 (1973), a lump sum verdict of $50,000 was obtained by a husband and wife. Defendants' primary insurer appealed the ruling from a garnishment proceeding holding it liable for the full judgment. The policy had a per person limit of $25,000 and a per occurrence limit of $50,000. The court simply declared the per occurrence limit applicable, citing *Cotton States Mutual Ins. Co. v. Phillips*, 108 Ga.App. 56, 131 S.E.2d 803, 806 (1963). The court held:

> The policy provision in question does not deal with apportionment of damages but with limits of liability, and that limit is controlled by whether only one, or more than one, person is injured in one accident.... [I]n the present case more than one person was injured and the limitation of liability for one accident is applicable.

*Foster v. Giroux*, 506 P.2d at 899.

We are not persuaded to follow *Foster*. *Foster* does not set out the policy language which was construed by the Washington court to allow "a limit of $50,000 for two or more persons arising out of one occurrence, ..." 506 P.2d at 899. We cannot assume that those provisions are similar to the "LIMITS OF PAYMENT" language in Nationwide's policy. In *Foster*, the appellate court noted that no exception was taken to the trial court's instruction on damages and no request was made during the injury trial for the trial court or the jury to segregate the damages. In the appeal from the subsequent garnishment proceedings, the court held that the trial court in the injury action could have ruled if a request had been timely made, but it would not be proper for the court in the garnishment action to make such a ruling.

Also, reliance on the *Cotton* case is suspect. The Georgia Court of Appeals' decision in *Cotton* appears to have little continuing validity in light of the Georgia Supreme Court's later ruling in *State Farm Mutual Automobile Ins. Co. v. Hodges*, 144 S.E.2d 723, 221 Ga. 355 (1965). In *Hodges* the court held an insurer was not liable for a wife's general verdict containing consequential damages attributable to the husband which, if paid, would exceed the per person limit applicable to the husband's bodily injury.

Another case relied on by the Buckleys is *Perkoski v. Wilson*, 371 Pa. 553, 92 A.2d 189 (1952). There the Pennsylvania court held that an insurer was estopped from denying liability for an unapportioned verdict after it defended an action without first advising the insured of the potential conflict of interest. *Perkoski* is inapposite since it is grounded in estoppel and does not address the allocation issue. The court specifically declined to rule on the effects of an unallocated verdict where the insurer was not estopped from denying liability.

---

**3.** As we stated, only the Orems were in a position to challenge by appeal the decision of the trial court not to give a segregated verdict. The correctness of that decision is not an issue in this appeal by Nationwide, and we offer no opinion in that regard. We do note that, in comparative negligence actions, I.C. § 6–802 provides in part that "the court may, and when requested by any party *shall*, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; ...." (Emphasis added.) Whether this statute is applicable where, as here, the issues being tried by the jury are narrowed to the question of damages only is something we need not decide.

Nationwide contends that the party seeking to recover bears the burden of proving that damages are within the policy limits. This assertion is based on multi-plaintiff cases, collected at 13 A.L.R.3d 1228, § 4, where a party having obtained a general verdict for bodily injuries and consequential damages attributable to the party's spouse seeks recovery under an insurance policy. An illustrative case is *Universal Underwriters Insurance Corp. v. Reynolds*, 129 So.2d 689 (Fla.App.1961). There a husband obtained a general verdict after proving his own bodily injuries and also proving he had consequential damages resulting from injury to his wife and son. The wife obtained a separate verdict essentially exhausting the per person limit of the insurance policy. The insurer argued that it was not liable for that portion of the husband's verdict awarding him consequential damages; and that, absent allocation, it was not liable for any portion of the husband's verdict. The court held for the insurer, stating as the majority rule:

> [T]hat where a judgment includes elements for which an insurer is liable and also elements beyond the coverage of the policy, the burden of apportioning these damages is on the party seeking to recover from the insurer. See e.g. *Morris v. Western States Mutual Auto Ins. Co.*, 7 Cir., 1959, 268 F.2d 790; *General Accident, Fire and Life Assurance Corp. v. Clark*, 9 Cir., 1929, 34 F.2d 833; *Yancey v. Utilities Ins. Co.*, 23 Tenn.App. 663, 137 S.W.2d 318. That it is impossible for the plaintiff to do so in the case at bar does not change the basic predicament in which he finds himself.

129 So.2d at 691.

For reasons which follow, we adopt the majority rule exemplified by *Reynolds, supra; Yancey v. Utilities Ins. Co.*, 23 Tenn. App. 663, 137 S.W.2d 318 (1939); and *Morris v. Western States Mutual Automobile*

*Ins. Co.*, 268 F.2d 790 (7th Cir.1959). This rule requires the party seeking recovery to first show that the claim is apparently within policy coverage. The insurer then bears the burden of producing evidence showing a substantial likelihood of over-payment should the unallocated verdict be paid. It is then up to the claimant to prove that overpayment would not occur by full payment of the verdict. This procedure allows the insurance contract to control insurer liability while preventing the insurer from escaping liability due to a bare possibility of overpayment. *See Brewer v. Occidental Fire and Casualty Co.*, 219 Tenn. 584, 412 S.W.2d 210 (1967); *Duke v. Hoch*, 468 F.2d 973 (5th Cir.1972).[4]

This rule is consistent with the general principles that the burden is upon the insurer to show the limits of its liability, and the burden is on the insured to demonstrate that a loss is encompassed by the general coverage provisions of the insurance contract. 21 J. APPLEMAN, INSURANCE LAW AND PRACTICE § 12281 (1980). An injured party who has recovered a judgment against the insured and who seeks to collect from the insurer, in effect, stands in the shoes of the insured. A. WINDT, INSURANCE CLAIMS AND DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 9.01 (1982).

Whenever non-related persons, injured as a result of one occurrence, present their claims in a joint trial each must prove his or her entitlement separately. No one would suggest in such cases that the verdict or verdicts should not separately state the damages for each injured party. The practice should be no different merely because the injured parties happen to be husband and wife. As the Washington Court of Appeals noted in *Foster v. Giroux, supra,* the mere fact that the judgment obtained by the married couple in the primary

---

**4.** In *Duke* the appellate court applied the rule with certain safeguards which recognize the particular responsibilities an insurer has to its insured when providing the defense in the injury action. *See, e.g.,* 7A J. APPLEMAN, INSURANCE LAW AND PRACTICE §§ 4681–94

(1962 and supp. 1974). Essentially, we adopt the same procedure outlined in *Duke* but with some modifications that, in fairness, need to be made given the circumstances in this case. We discuss this in part II, *infra,* dealing with the remand.

action is community property in no way affects the contractual obligations of the insurance company or operates to increase the limits of liability under the policy.

We believe that requiring intervention by an insurance company in the primary action as a prerequisite to allowing the company to assert its clearly stated policy limits is a costly solution to an easily correctable problem. Intervention, with its added litigation expense, with its tendency to protract, to divert and to complicate the injury action, would certainly occur in more cases than necessary.[5] Admittedly, the district judge in this case sought to create a narrow rule, limiting it to cases where the injured parties were husband and wife.[6] Nevertheless, it would seem to invite broader application.

It is undisputed that the Buckleys' damages are within the $300,000 policy limits for a single occurrence. However, as we have noted, the insurer has shown that both the per person and the per occurrence limits apply when two or more persons receive bodily injuries in a single occurrence. The Buckleys have not recognized that they have any burden to establish that their damage award comes within the per person limit. On the other hand, Nationwide has shown there is a good likelihood that the verdict exceeds its per person policy limit of $100,000. Nationwide has made that showing as follows. The $10,000 amount awarded in the verdict for Betsy's loss of consortium must, for purposes of insurer liability, be attributed to the per person limit for Kelly's injuries. Loss of consortium is a wholly derivative action arising from injury to the claimant's spouse. *Runcorn v. Shearer Lumber Products, Inc.,* 107 Idaho 389, 690 P.2d 324

(1984). As such, an insurer's liability for this claim is included within the policy limits of liability to the injured spouse. *Thompson v. St. Paul Fire & Marine Ins. Co.,* 108 Idaho 802, 702 P.2d 840 (1985). Therefore, Nationwide's liability to Kelly Buckley on the unapportioned verdict could not exceed $90,000 ($100,000 less $10,000 awarded to Betsy for loss of consortium).

The unapportioned verdict was for $115,000. Kelly Buckley received severe injuries resulting in extensive hospitalization, surgery and rehabilitation. Kelly's damages include future impairment of the use of one of his knees, loss of future earnings and future medical bills. Betsy, on the other hand, received minor injuries which healed within a month and her medical bills were under $300. While we are cognizant that Betsy suffered the trauma of a serious accident and is entitled to compensation for her own pain and suffering, nevertheless, Nationwide has shown a substantial likelihood of overpayment to Kelly Buckley. Thus, the burden has shifted to the Buckleys to prove otherwise. Because they cannot prove that damages awarded to Kelly come within the policy limits Nationwide will prevail unless the Buckleys are relieved of their burden for other reasons. We will now discuss that possibility and the need for a remand.

## II

In *Duke v. Hoch, supra,* the Tennessee Court makes what we believe is a well-reasoned analysis of the interplay between a particular verdict form and the insurer's responsibilities when providing and directing the defense of its insured in the injury action. Thus, in *Duke,* after the trial be-

---

5. At least one authority discourages intervention of insurance companies in the injury trial for a variety of reasons. *See, e.g.,* A. WINDT, *supra,* § 9.09 at 354.

6. A fair and basic solution is one the trial courts can generally adopt in all cases where there are multiple claimants or multiple claims. The courts should ignore the strategically oriented preferences of counsel and should regularly insist on verdict forms that at least provide sepa-

rate blanks for each claimant's damages and for each major division or type of allowable damages. Failure to do this can result in the unnecessary loss of a whole "lump sum" verdict and retrial because there is hidden in the verdict an improper or unsupportable component of damages. *See, e.g., P.N. Cedar, Inc. v. D & G Shake Co.,* 110 Idaho 561, 716 P.2d 1333 (Ct.App.1986); *Nelson v. World Wide Lease, Inc.,* 110 Idaho 369, 716 P.2d 513 (Ct.App.1986).

tween the injured party and the insured, when the insurer sought to limit its liability to the coverage provided by the contract, the insurer was required to show that it had faithfully and fully performed its responsibilities to its insured by disclosing the need for an allocated verdict. The application of this principle has consequences in the secondary action where the injured party is directly pursuing insurance proceeds through garnishment or other post-trial litigation involving the insurer. This carry-over effect occurs because at this secondary stage of the litigation the injured party stands in the shoes of the insured party. Accordingly, the injured party will be able to assert rights the insured would have had against the insurer and the insurer will be able to rely on any defenses which it could assert against its insured.

In *Duke,* in the injury trial, no request was made by the injured party (Duke) or by the insured (Hoch and Associates) for an allocated verdict. Later, in the garnishment action, Hoch's insurer invoked the defense that Duke could not show what part of his verdict was for negligently caused injuries, covered by the policy, and what part was for separate intentional torts which were not covered. The trial court held that the insurer prevailed because Duke could not meet his burden of proving that all awarded damages were covered by the policy. The appellate court reversed saying that:

> [A]t the merits trial [the insurer's] counsel was required to make known to the insured[s] the availability of a special verdict and the divergence of interest between [the insureds] and the insurer springing from whether damages were or were not allocated. The record before us does not indicate that counsel did so.
>
> . . . .
>
> Since on the present record the insurer failed to fully advise its insureds of the divergence of interest between it and them with respect to the verdict, the insureds [and the judgment creditor, Duke] must, subject to the possibility noted in part III, *infra,* be freed of the

impossible burden of proof placed on them.

468 F.2d at 979–80.

However, the court remanded the case to give the insurer an opportunity to submit proof as to whether the insurer's counsel, as counsel having the right to control the defense, had adequately disclosed the situation to the insured's own counsel. If the insurer could not make such a showing then the district court was instructed to "face the issue of attempting retrospectively to allocate the damages awarded." 468 F.2d at 984.

Admittedly, there are significant differences between *Duke* and the present case. In *Duke* the insured was defended by his own independently retained counsel and by counsel provided by the insurer. Here, apparently, the Orems were defended by counsel provided by Nationwide. In *Duke* no request for an allocated verdict was made by anyone. In the present case, the Orems' counsel requested, but did not get, an allocated verdict, while the Buckleys—who now stand in the Orems' shoes—opposed the use of an allocated verdict.

Considering the position taken by the Buckleys at trial concerning the verdict form we could easily hold that they now have no right to complain about the consequences of their tactical choice. The Buckleys, beyond any question, hindered the Orems' attempts to have a verdict allocating damages between the two injured parties. Thus, as between the Buckleys and Nationwide we could hold that Nationwide should prevail. This decision would simply mean that Nationwide's liability to the Buckleys for bodily injury damages would be limited to $100,000. It would not prevent the Buckleys from collecting the balance of their judgment from the Orems' son.

Clearly such a result could impact the Orems who have not appeared in this appeal. Nevertheless, the Orems would have no reason to feel abused by their insurer if Nationwide reserved its defenses and fully apprised the Orems of the effect of a verdict or verdicts exceeding the per person or

per occurrence limits. In *Duke* the duty to the insured included the disclosure of the particular need for an allocated verdict. Here, it might seem apparent that because the Orems requested an allocated verdict they must have been informed of the particular need for one arising from the policy limits. Their counsel, however, initially expressed a different purpose for the verdict. As a result, from the present record, we cannot say that the Orems' counsel was in a position to make an effective request for the verdict. Accordingly, we will remand to afford Nationwide the opportunity to develop the record on this point. Additional evidence shall be allowed and appropriate findings should be made. If the trial court finds that Nationwide fully and fairly handled its defense responsibilities to the Orems in a timely manner, then the court should enter an order limiting Nationwide's liability to $100,000 for all bodily injuries suffered by Kelly and Betsy Buckley.

Nationwide's duty to the Orems need not be as extensive as that of the insurer in *Duke*. The *Duke* case was tried in Florida, a jurisdiction where the burden of allocation issue is settled. *Universal Underwriters Ins. Corp. v. Reynolds, supra.* Thus, the divergence of interest between the insurer and the insured was known and needed to be disclosed. This issue was until today undecided in Idaho. Therefore further proof is necessary to show whether Nationwide fully and fairly handled its defense responsibilities to the Orems in light of known risks. This will include, at a minimum, proof that Nationwide clearly and fully informed the Orems that it was reserving the right not to pay any portion of a judgment exceeding the applicable policy limits. In this case consideration should be given to the fact that counsel for the Orems did request an allocated verdict. Henceforth an insurer's duty in this regard shall be as extensive as that outlined in *Duke*.

If Nationwide cannot show that it informed the Orems of their interest in the verdict form then the trial court should proceed retrospectively to allocate the damages awarded, as best it can, and then to apply policy limits to determine whether Nationwide is liable for any additional part of the unsatisfied judgment.

### III

■ Nationwide next asserts that the district court erred in ruling that Nationwide is liable for interest accruing on the Buckleys' judgment against the Orems. Nationwide's policy states: *"[W]e will pay interest accruing on all damages awarded, until such time as we have paid, formally offered, or deposited in court the amount for which we are liable under this policy."* (Emphasis original.) Nationwide contends that because the Orems made a formal offer prior to trial to allow a $100,000 judgment to be taken against them for the claims of Kelly Buckley and a $5,000 judgment for the claims of Betsy Buckley—both of which offers were backed by Nationwide's policy proceeds—and because Nationwide's liability under the policy does not exceed $100,000, it has no obligation to pay any interest under the above quoted clause. This may be true. On remand, if the trial court determines that Nationwide's liability on the Buckleys' judgment does not exceed the amount Nationwide was prepared to contribute toward the formal offer of judgment then Nationwide, under the terms of its policy, has no obligation to pay any interest on the judgment. A similar conclusion was reached in *Lehner v. County of Erie*, 53 Misc.2d 710, 279 N.Y.S.2d 581 (1967), on nearly identical policy language.

■ Nationwide next argues that even if its liability on the Buckleys' judgment exceeds $100,000 it was error to award interest on $100,000 of the judgment for a period beyond August 18, 1983. We agree. In a letter, dated August 18, 1983, counsel for the Orems informed the Buckleys:

I received a check for $100,000 to be used in return for a partial satisfaction of judgment in this case. As we discussed, Mr. and Mrs. Orem have limited liability in this matter, and the $100,000 payment should fully satisfy the judg-

ment against them. It would also partially satisfy the judgment against [their minor son]. Please let me know if you will agree to a partial satisfaction of judgment in return for the $100,000 payment.

The Buckleys contend that this offer cannot terminate the running of interest because it is conditional and it does not constitute a valid tender. They cite us to *Packard v. Joint School Dist. No. 171*, 104 Idaho 604, 614, 661 P.2d 770, 780 (Ct.App. 1983), where we held that:

[A] conditional offer of settlement during pendency of an appeal, which results in no actual transfer of funds from the judgment debtor to the judgment creditor, does not terminate the running of statutory interest upon the judgment. This holding is consistent with the principle that payment of a judgment by the judgment debtor will terminate the creditor's right to statutory interest only if payment is tendered unconditionally and without prejudice to the judgment creditor's right to appeal.

Here, however, the offer by Nationwide did not prejudice the Buckleys' right to collect on the full judgment. Mr. and Mrs. Orem, although named defendants, are not liable for the full judgment. The district court ruled that Mr. and Mrs. Orems' liability arose from imputed negligence and not by their own negligent acts. Thus, I.C. § 49–1404 imposes a ceiling on their liability for property damage and injuries. Their son remains liable for the balance of the judgment, and the offer constituted only a partial satisfaction of his liability. Because payment of $100,000 would extinguish the parents' liability, the full release of the parents in return for $100,000 could not affect the Buckleys' ability to collect the full judgment from the son; and thus, did not render the offer conditional.

The Buckleys argue that the letter was a mere proposal to proffer the check and was not a valid tender sufficient to stop interest from accumulating. First, Nationwide's liability to pay interest is controlled by the policy language we have previously quoted.

*See Security Insurance Co. of Hartford v. Houser*, 191 Colo. 189, 552 P.2d 308 (1976). Nationwide deposited $104,963.99 with the court on May 7, 1984 and the court stopped interest from accruing on that portion of the judgment. However, interest on $100,000 should have been halted earlier, in August of 1983. The policy stops Nationwide's liability for interest on an amount when it is "formally offered." Even if we were to construe "formally offered" as synonymous with tendered, the letter still serves to halt further accrual of interest. Idaho Code § 9–1501 provides: "An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument or property." Like the common-law rule of tender, I.C. § 9–1501 requires a present ability to pay the amount of the tender. *See Dohrman v. Tomlinson*, 88 Idaho 313, 399 P.2d 255 (1965). Here, counsel for the Orems had, in hand, a check from Nationwide for $100,000. We hold that the offer was unconditional and that by either the terms of the policy or I.C. § 9–1501 Nationwide is not liable for interest accruing on $100,000 of the judgment after the letter dated August 18, 1983 was mailed. Accordingly, we remand for recomputation of interest.

### IV

The last issue is attorney fees. The district court awarded fees pursuant to I.C. § 41–1839 because Nationwide had not paid or tendered the full amount of its liability. In light of the need to remand and our ruling that Nationwide, in any event, is not liable for all of the interest it was ordered to pay on the judgment we reverse the award of attorney fees.

In summary, we vacate the order holding that Nationwide is liable for payment of the entire $125,000 judgment. We remand for the taking of additional evidence and for findings that will determine whether Nationwide's liability exceeds the $100,000 per person limit of its policy. The district

court will then recompute Nationwide's liability, if any, for interest accruing on the judgment. Costs to Nationwide. No attorney fees on appeal.

WALTERS, C.J., and McFADDEN, J., Pro Tem., concur.