888 P.2d 383

CITY OF IDAHO FALLS, a municipal corporation, Plaintiff–Appellant–Cross Respondent,

v.

The HOME INDEMNITY CO., a corporation, Defendant–Respondent–Cross Appellant,

and

Emmett E. Gallup, an individual; and Twin City Fire Insurance Company, a corporation, Defendants.

No. 20716.

Supreme Court of Idaho, Pocatello, September 1994 Term.

Jan. 12, 1995.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for plaintiff-appellant-cross respondent. Dale W. Storer argued.

Thomsen & Stevens, P.A., Idaho Falls, and Cozen and O'Conner, Seattle, WA, for defendant-respondent-cross appellant. John P. Erlick argued.

SILAK, Justice.

This is an insurance coverage dispute. The City of Idaho Falls (City) purchased from The Home Indemnity Company (Home) an errors and omissions liability policy which required Home to indemnify and defend the City as provided in the policy. Thereafter, the City was sued in several class action complaints involving the City's contract with the Washington Public Power Supply System (WPPSS). Home denied coverage, and the City filed this declaratory judgment action to require Home to defend and indemnify it in the WPPSS litigation.

## I.

## BACKGROUND AND PROCEEDINGS BELOW

The policy the City purchased from Home was issued for a three year period, from June 30, 1982 to June 30, 1985. The policy included a one year "Prior Acts Endorsement," effective retroactively for the period June 30, 1981 through June 30, 1982. The policy insured against "wrongful acts" which occurred during the policy period. By definition, wrongful acts included "any actual or alleged error, misstatement, act, omission, neglect or breach of duty" by the insured.

Beginning in March 1983, the City was named as a defendant in a substantial number of bondholder lawsuits alleging securities fraud violations, negligence, misrepresentations, and omissions by the named defendants. (hereafter "WPPSS Litigation") The WPPSS Litigation spawned from bond financing for two nuclear power plants in the State of Washington, which were never fully constructed. For a more detailed history, see *Asson v. City of Burley*, 105 Idaho 432, 670 P.2d 839 (1983). Ultimately, most of the WPPSS Litigation was consolidated into a class action in the United States District Court for the Western District of Washington (herein "MDL–551"). The MDL–551 complaint alleged in part:

> During the Class Period for this claim, [1/22/82–6/15/83] the defendants, ... issued public statements and reports, including the 14 Official Statements, ... which were materially false and misleading....

> \* \* \* \* \* \*

> From January 23, 1982, and continuing through June 15, 1983, the defendants ... engaged and participated in or aided and abetted a plan and continuous course of conduct to conceal adverse material information....

When the City was served with process with two WPPSS Litigation complaints, the City tendered them to Home requesting that Home defend and indemnify the City. Home declined coverage on grounds that most of the wrongful acts were alleged to have occurred before the retroactive date of the Home policy. The City then hired a Seattle law firm to represent it in the WPPSS Litigation, and as of September 1989, had incurred $1,024,923 in defense costs. In September 1988, the City was among a group of defendants who settled with the MDL–551 plaintiffs. For its share of the settlement, the City agreed to pay $3,646,929.

The City commenced this action on November 22, 1985, against Home, Twin City Fire Insurance Company, and Emmett Gal-

lup, an insurance broker. The claims against Twin City and Emmett Gallup were resolved below. In 1988, the City and Home entered into a stipulation for partial dismissal wherein Home agreed to pay $500,000 in consideration of the City dismissing some of its claims. Under the stipulation, Home waived all defenses with respect to its duty to defend and indemnify the City in the WPPSS litigation. However, the parties specifically reserved their right to litigate the amount of the policy limits under the facts of the case.

In December 1989, the district court granted partial summary judgment against Home for an additional $500,000, plus prejudgment interest, holding that the wrongful acts asserted during the first policy year were not the same or related to the wrongful acts alleged during the Prior Acts Endorsement period. The district court further rejected Home's argument that the City failed to demonstrate it satisfied the $1,000 deductible for each claim. The court also granted partial summary judgment in favor of Home, dismissing the City's claim for a third $500,000. Following the filing of motions for reconsideration by the City and Home, the district court reaffirmed its earlier ruling.

## II.

## ISSUES

There are three main issues in this appeal. The first concerns the policy limit for the Prior Acts Endorsement portion of the policy. The City contends that the policy limit is $1,500,000, while Home contends it is $500,000.

The second issue is whether the claims of the plaintiffs in the WPPSS Litigation asserted during the first year of the policy are claims that arise out of the "same or related wrongful acts" as claims asserted beforehand, during the Prior Acts Endorsement period. Home contends all such claims are the same or related, and therefore subject to a single $500,000 limit for the Prior Acts Endorsement period. The City contends they are not the same or related, and are thus recoverable within the policy limits of both periods.

The third issue is whether the $1,000 deductible in the Home policy applies separately to the damages claim of each bondholder in the WPPSS Litigation.

## III.

## STANDARD OF REVIEW

■ In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on the motion for summary judgment. *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 681, 837 P.2d 805, 807 (1992). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Summary judgment shall be granted if the court determines that "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Bonz,* 119 Idaho at 541, 808 P.2d at 878. The fact that the parties have filed cross-motions for summary judgment does not change these standards; this Court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Bear Island Water Ass'n, Inc. v. Brown,* 125 Idaho 717, 721, 874 P.2d 528, 532 (1994) (citing cases).

## IV.

## ANALYSIS

### A. POLICY LIMIT FOR PRIOR ACTS ENDORSEMENT

■ The Home policy provided an "aggregate" errors and omissions liability limit of $500,000. This $500,000 limit applied separately to each annual period of coverage pursuant to Condition 10 of the policy:

10. Three Year Policy: If this policy is issued for a period of three years any limit of the company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

The policy term was for three years, but also included a Prior Acts Endorsement retroactively covering the year before the three-year term. The Prior Acts Endorsement does not state a numerical liability limit. Rather, it provides in pertinent part:

1. Such insurance as is afforded by the Errors and Omissions Liability Coverage is extended to include any **wrongful act** which occurred on or after the retroactive date shown hereon and prior to the inception date of the policy and which arises out of the discharge of duties by an **insured** on behalf of a public entity.... (emphasis original)

\*　　\*　　\*　　\*　　\*　　\*

4. All other terms and conditions of this policy shall apply to such prior acts as if such prior acts had occurred during the policy period.

The district court held that the foregoing language is clear and unambiguous, and establishes a $500,000 liability limit for the Prior Acts Endorsement period. We agree.

It is undisputed that the policy provided $500,000 coverage for each year of the prospective period, June 30, 1982—June 30, 1985. (*See* Condition 10 quoted above) Under the express terms and conditions of the policy, the amount of insurance (and Home's exposure) was limited to $500,000 per year between 1982 and 1983. The Prior Acts Endorsement declares that *"[s]uch insurance* as is afforded by the Errors and Omissions Liability Coverage *is extended* to include any wrongful act which occurred on or after the retroactive date ..."* (emphasis added) and *"[a]ll other terms and conditions* of this policy shall apply to such prior acts as if such prior acts had occurred during the policy period."* (emphasis added) One "condition" of the policy incorporated by the Prior Acts Endorsement was Condition 10's limitation that the "aggregate" liability ($500,000) applies to each "annual" period. The

Prior Acts Endorsement was an "extension" for another "annual" period. Hence, the liability limit of the Prior Acts Endorsement was $500,000 for that annual period.

The City argues that the language in paragraph 4 of the Prior Acts Endorsement stating "as if such prior acts had occurred during the policy period" means that Prior Acts coverage exists as if the wrongful acts fell within the entire three-year policy period, allowing for a combined limit of $1.5 million. We find this interpretation insupportable. The City's interpretation ignores the express language in Condition 10 that the aggregate limit ($500,000) applies separately to each annual period. Condition 10 was incorporated by reference into the Prior Acts Endorsement. The plain meaning of the provisions read together establishes a $500,000 policy limit for the Prior Acts period, the same as for the years 1982–1985.

Alternatively, the City argues the policy is ambiguous regarding the liability limit for the Prior Acts period, and the district court should have considered extrinsic evidence to ascertain the parties' intent. Regarding the parties' alleged intent, the City had offered the affidavit of a Mr. Robert Marshall describing conversations with the insurance broker Emmett Gallup when the City obtained the policy from Home.

■ If the contract is clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law, *Rath v. Managed Health Network, Inc.*, 123 Idaho 30, 31, 844 P.2d 12, 13 (1992), and the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words. *Wood v. Simonson*, 108 Idaho 699, 702, 701 P.2d 319, 322 (Ct.App.1985). Here, the policy terms are clear and unambiguous. The district court correctly refused to consider the affidavit of Mr. Marshall.

We have also considered the other issues raised on appeal by the City and conclude they lack merit. Accordingly, district court's order declaring the policy limit for the Prior Acts Endorsement period to be $500,000 is affirmed.

### B. WRONGFUL ACTS DURING FIRST YEAR OF POLICY

On cross-appeal, Home argues that according to the policy, "[a]ll claims arising out of the same or related wrongful acts" are subject to a single liability limit of $500,000. According to Home, the claims asserted during the first year of its policy are the "same or related wrongful acts" alleged to have occurred during the previous year covered by the Prior Acts Endorsement. The district court concluded the claims asserted during the two periods were *not* the same or related wrongful acts, and accordingly, granted partial summary judgment against Home for an additional $500,000. We agree with district court.

■ Home concedes it was obligated to defend claims alleged during the first year of the policy which do *not* arise out of "the same or related wrongful acts" as are alleged during the year covered by the Prior Acts Endorsement. Regarding the duty to defend, the parties agree that where a complaint, read broadly, reveals "a *potential* for liability that would be covered by the insured's policy" the insurer's duty to defend arises. *Kootenai County v. Western Cas. & Sur.*, 113 Idaho 908, 910, 750 P.2d 87, 89 (1988) (emphasis original). Likewise, because the City executed a settlement in the WPPSS litigation, Home's duty to indemnify arises so long as a *potential* liability for the City existed which resulted in a reasonable settlement in view of the size of possible recovery and the probability of the claimant's success against the City. *Luria Bros & Co. v. Alliance Assur. Co.*, 780 F.2d 1082, 1091 (2d Cir.1986); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 820 F.Supp. 530, 535 (W.D.Wash. 1992). Although the duty to defend and the duty to indemnify are separate, and unrelated obligations, *e.g.*, *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 798, 683 P.2d 440, 446 (Ct.App.1984), we will address both together because the determinative issue for both obligations is whether the MDL–551 Complaint revealed a "potential liability" which would be covered by the first year of the Home policy.

■ The Home policy provides coverage for "any wrongful act which occurs during the policy period." The district court found that the MDL–551 Complaint alleged a "multiplicity of wrongful acts" such as

(1) entering into the Participants' Agreement without authority; (2) issuance of bond counsels' opinions that accompanied each of 14 separate bond issues stating that the Agreement was enforceable; (3) failure to file a declaratory action to determine the enforceability of their agreement prior to the sale of the bonds; (4) negligent forecasting of power demands; (5) negligent failure to ensure that the Participants' Agreement guaranteeing the bonds was enforceable; (6) mismanagement of the construction of the mothballed nuclear plants; (7) negligent misrepresentations regarding the participants' willingness or ability to repay the bond obligations; (8) negligent supervision of the bond issues; (9) concealment of adverse information about the need for, management, finances and construction of Project Nos. 4 and 5; and (10) issuance of 14 official statements which were materially false and misleading.

The district court found that these misrepresentations and omissions were allegedly made or committed on numerous occasions from as early as July 1976 through June 15, 1983, thus overlapping both the Prior Acts Endorsement period (6/30/81–6/30/82) and the first year of the policy (6/30/82–6/30/83). Because the MDL–551 complaint alleged wrongful acts occurred during the first policy year, it reveals at least a *potential* liability for alleged acts during the first policy year.

Nevertheless, Home contends that the claims asserted during the first year of its policy are the "same or related wrongful acts" alleged to have occurred previously during the Prior Acts Endorsement period. In support of this argument, Home relies on the fact that the same types of misrepresentations and omissions are alleged during an interval spanning both periods.

However, simply because the same types or categories of wrongful acts are alleged over an interval spanning both the Prior Acts Endorsement period and the first policy year does not mean that all wrongful acts were in

fact the same or related. Moreover, the MDL–551 complaint was a consolidated class action complaint. Because of the realities of class action litigation, and the settlement of the MDL–551 action before trial, there has never been an adjudication of the number of separate wrongful acts upon which the bondholders made their claims. Likewise, there has never been a determination of the dates during the class period each alleged wrongful act allegedly occurred. On the record before us, we simply cannot say that *all* wrongful acts alleged throughout the two periods are the same or related.

Rather, the issue is whether the consolidated class action complaint created a potential liability for the City during the first policy year. We hold that it did. The MDL–551 complaint alleged multiple, distinct misrepresentations and omissions which allegedly occurred on numerous occasions overlapping both the Prior Acts Endorsement period and the first policy year. If proved, those wrongful acts could have triggered coverage under the first year of the policy.

The Washington Supreme Court reached a similar conclusion in a related case, *Transcontinental Ins. Co. v. WPUDUS*, 111 Wash.2d 452, 760 P.2d 337 (1988). There, insurers brought a declaratory action to determine whether two insurance policies for the periods 1981–1982 and 1982–1983 provided coverage for the WPPSS bond default. The trial court reviewed thirteen complaints arising out of the WPPSS Litigation. The insurers argued that the only event which triggered coverage under the policies was the entry of WPUDUS into the Participants' Agreements without authority on July 14, 1976, and that this act predated the insurance policies in question. The Washington Supreme Court rejected that argument, holding that the complaints involve several types of injuries flowing from multiple, distinct events, which, if proved, could trigger coverage under one, or both policies. *Id.* 760 P.2d at 345–46. Accordingly, we hold that the district court properly rejected Home's argument that the claims during the first policy year were the "same or related wrong-

ful acts" alleged to have occurred during the Prior Acts Endorsement period.

## C. APPLICATION OF $1,000 DEDUCTIBLE TO EACH CLAIM

■ Alternatively, Home contends that if this Court holds that the wrongful acts alleged in the underlying action are unrelated, this Court is required to apply a $1,000 deductible for each unrelated claim. Since there were some 24,000 bond claimants, the argument goes, the City has to show that it satisfied the $1,000 deductible for each claimant.

First, we are not persuaded by Home's argument that the $1,000 deductible necessarily applies to each of the 24,000 bondholder claimants. The policy provides a $1,000 deductible for claims "arising out of the same or related wrongful acts." More than one bondholder could have been damaged by the same wrongful act, and a single $1,000 deductible would apply to their combined claims. In any event, the Home policy does not unambiguously provide that the deductible applies separately for each class claimant, and any ambiguity will be resolved against the insurer. *Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026 (9th Cir.1981) (ambiguity as to whether $5,000 deductible applied to each class member resolved against insurer; applying single deductible for class action lawsuit).

Secondly, this Court does not sit as a finder of facts. We need not, and have not, made a factual finding that all alleged wrongful acts are unrelated. We merely held in Section II that the MDL–551 Complaint created a potential liability that would be covered under the first year of the Home policy, which gave rise to Home's separate duties to defend and indemnify the City. As to Home's exhaustion of deductibles argument, we are again concerned only with whether the MDL–551 complaint created a potential liability of the City within the policy coverage. In its ruling below, the district court stated that Home failed to show any basis in the record to conclude that all unrelated claims in the class action suit were for less than $1,000. To the contrary, the MDL–551 Complaint alleged that all named plaintiffs

purchased bonds with principal amounts of at least $5,000, and some purchases were as high as $300,000, with total purchases of bonds in the principal amount of approximately $2.25 *billion.*

Clearly, there is a potential that damages for unrelated wrongful acts alleged against the City exceeded the $1,000 deductible. Under these circumstances, the $1,000 deductible provided no basis for Home to refuse to defend the City.

■ Likewise, $1,000 deductible does not relieve Home of its duty to indemnify. Home does not contend the City's $3.6 million settlement with the MDL–551 plaintiffs was unreasonable in view of the size of possible recovery and the probability of the claimants' success against the City. *See Luria Bros. & Co. v. Alliance Assur. Co.,* 780 F.2d 1082, 1091 (2d Cir.1986), *supra.* Hence, when the City settled with the MDL–551 plaintiffs, Home's duty to indemnify arose. Because of the potential that damages from unrelated wrongful acts could vastly exceed the $1,000 deductible, it was Home's burden to establish the limits of its liability. *See Buckley v. Orem,* 112 Idaho 117, 730 P.2d 1037 (Ct.App.1986) (burden is on insurer to show the limits of its liability). An insurer is not entitled to re-litigate an underlying action following a settlement. *See, e.g., Nordstrom, Inc. v. Chubb & Son, Inc.,* 820 F.Supp. 530, 535 (W.D.Wash.1992) *supra.* The district court correctly granted summary judgment to the City for $500,000, plus interest, for defense costs and damages for wrongful acts alleged during the first policy year.

## V.

### CONCLUSION

The district court's order ruling on the cross-motions for summary judgment is affirmed. Costs on appeal to respondent. Costs on cross-appeal to appellant. No attorney's fees on appeal.

McDEVITT, C.J., JOHNSON and TROUT, JJ., and REINHARDT, J. Pro Tem., **concur.**