83 P.3d 135

Brian A.K. REYNOLDS, an individual,
Plaintiff–Appellant,

v.

Gregory S. SHOEMAKER, an
individual, Defendant,

and

Allstate Insurance Company, a foreign
corporation, Defendant–
Respondent.

No. 29207.

Court of Appeals of Idaho.

Dec. 30, 2003.

**592**

Finney & Finney, Sandpoint, for appellant.

Morrison & Associates, P.C., Coeur d'Alene, for respondent.

GUTIERREZ, Judge.

Brian A.K. Reynolds appeals from the district court's grant of summary judgment and dismissal of his action against Allstate Insurance. We affirm.

## I.

## FACTUAL AND PROCEDURAL SUMMARY

Gregory S. Shoemaker executed a promissory note in the amount of $35,000 to purchase from Brian Reynolds real property that had been improved with a dwelling and a shed. The note was secured by a first priority deed of trust. The loan transaction was handled by Reynolds' father, David Reynolds (hereafter "Dave"), who holds a general power of attorney on behalf of his son. Shoemaker purchased an Allstate Insurance Company Residential Fire Policy in order to meet an insurance requirement upon which Reynolds had conditioned the loan. The policy named Shoemaker as the insured, and designated Reynolds as the Mortgagee.

Less than a month after the purchase, a fire caused extensive damage and loss to Shoemaker's home. After Shoemaker filed a claim, Allstate drew a check in the sum of $28,500.53 payable to the order of Greg Shoemaker and "Mortg." Brian Reynolds. This check was delivered to Shoemaker at his mailing address. Shoemaker met Dave at a local cafe to discuss how the check was to be divided. Dave told Shoemaker that he wanted enough of the proceeds to pay the balance due on the promissory note ($36,425) down to the assessed value of the lot ($12,500), despite understanding that Reynolds was entitled to the entire amount of the check. Shoemaker hoped to instead apply only $10,000 to the note. Dave suggested that Shoemaker attempt to renegotiate the amount of the check with Allstate, and Shoemaker gave the check to Dave to hold. Pursuant to Shoemaker's later instruction, Dave returned the check to Allstate. Shoemaker then sent a letter to Allstate arguing that:

> *Brain* or Dave Reynolds has no legal right to have their name on my check for the loss of my home. Also my insurance shows *the* Gregory Shoemaker is the insured party & by law the only. So please *male* or *sind* all future *corrspondence* to Me & Me *olny*. (sic; underscores added).

Allstate chose to not increase the amount of the proceeds and re-delivered the same jointly payable check to Shoemaker. Shoemaker attempted to use the check to re-finance the note on the property. Dave, alerted to Shoemaker's attempt to re-finance, was asked to come down and sign the check but declined to do so. Shoemaker was told that the new loan could not go through as the State of Montana held a lien on the insurance proceeds because of child support debts owed there by Shoemaker. Shoemaker thereafter embarked on an extended period of constant

inebriation and drug abuse, during which time he claims he went to Dave's house, check in hand. Dave says he did not see Shoemaker or the check. Shoemaker says that he "thought [Dave] signed it, and we sent it to child support." Either way, the check was sent to Helena, Montana, where it was cashed over Shoemaker's signature and an alleged forgery of Brian Reynolds' signature. Reynolds' signature identified him as "Brain" as opposed to "Brian," an error Shoemaker had made in his earlier letter to Allstate, and a mistake that Dave, who "named that kid thirty-nine years ago," would be unlikely to make.

Reynolds then filed a complaint against Allstate to collect on the check issued as payment under the insurance policy; Reynolds also named Shoemaker as a defendant for allegedly forging Reynolds' signature. Allstate filed an answer and a cross-claim against Shoemaker, and filed a motion for summary judgment that was granted by the district court. Reynolds appeals.

## II.

### ANALYSIS

Reynolds argues that he alone is entitled to the policy proceeds because his interest in the property exceeded the amount of the loss, and that Allstate did not satisfy its contractual obligation to issue and deliver a check to Reynolds. Allstate does not dispute Reynolds' claim to the insurance proceeds, but argues that delivery of a check jointly payable to Reynolds and Shoemaker fulfilled its obligation under the terms of the insurance contract.

The standard of review on appeal from an order granting summary judgment is the same as the standard used by the district court in passing judgment on that motion. *Harwood v. Talbert,* 136 Idaho 672, 677, 39 P.3d 612, 617 (2001). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v.*

*Kuna Joint School Dist.,* 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994). The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox,* 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct.App.1992).

Because Allstate concedes that Reynolds is entitled to the entire proceeds of the insurance check, the resolution of this appeal turns on whether the language of the insurance contract imposes a duty on Allstate to make the insurance proceeds payable solely to Reynolds. Our standard of review when faced with interpretation of an insurance contract depends on whether the contract is ambiguous. *Western Heritage Ins. Co. v. Green,* 137 Idaho 832, 835, 54 P.3d 948, 951 (2002). If the terms of a contract are clear and unambiguous, then interpretation of that contract is a question of law. *City of Idaho Falls v. Home Indem. Co.,* 126 Idaho 604, 607, 888 P.2d 383, 386 (1995). The meaning of an unambiguous contract must be determined from the plain meaning of the contract's own words. *Id.*

According to Reynolds, the language of the insurance contract expressly mandates the insurance proceeds be made payable solely to him because the amount of Reynolds' first priority deed of trust was an amount in excess of the loss payment. In support of this contention Reynolds cites the entire contract, including endorsements, in general and as a whole. However, we conclude that there is no express provision in the contract that mandates the insurance proceeds be made payable in Reynolds' name alone. In the absence of an express provision, Reynolds nevertheless argues that the insurance contract imposes an affirmative duty upon Allstate to make the insurance proceeds payable to Reynolds alone. Such a duty does not exist within the four corners of the insurance contract.

The insurance contract expressly provides that Allstate will settle any covered loss with "you." Reynolds contends the definition of "you" refers to the mortgagee. However, the definitions section of the contract defines

"you" as the policyholder named on the declarations page of the contract. Although the declarations page does not contain the term "policyholder," Shoemaker is clearly identified as the "named insured." Furthermore, the insurance contract consistently uses the term "you" to refer to the named insured in terms of the insured's rights and responsibilities. For example, "the insurance contract is an agreement with 'you' "; "if 'you' die, coverage will continue until the end of the premium period"; "Allstate will give 'you' notice of cancellation; in the event of a loss, 'you' must promptly provide notice"; " 'you' must pay the premium." In contrast, the insurance contract refers to the mortgagee as "the mortgagee." Likewise, the lender is referred to as "the lender."

The insurance contract does require Allstate to pay compensation in the event of loss to the mortgagee "to the extent of [the mortgagee's] interest." However, the mortgagee clause does not require Allstate to determine the extent of that interest. In fact, the plain language of the contract places that burden first on the insured and second on the mortgagee. By the terms of the insurance contract, if the named insured has failed to provide a signed, sworn proof of loss within sixty days that includes information about the interest held by the named insured and others, the mortgagee has sixty days after their notice of the loss within which to furnish Allstate with that information. There is no evidence that Reynolds ever alerted Allstate as to the extent of his interest until well after sixty days had passed. Reynolds also argues that the lender's loss clause, which was apparently an addendum to the original contract, mandates payment of the entire claim to him. Again, as with the mortgagee clause, the lender's loss clause does not impose a duty on Allstate to determine the extent of the lender's interest or that insurance proceeds payment be made solely to the lender.

■ Had this matter gone to trial, Reynolds would have been required to establish that Allstate did not comply with its contract of insurance by issuing a jointly payable check. In other words, Reynolds would have had to prove that Allstate had a duty to issue the check to Reynolds alone. We are unable to read such a duty into the insurance contract, or find any ambiguity that could support this proposition by implication. Reynolds cites *Foremost Insurance Co. v. Putzier*, 102 Idaho 138, 144, 627 P.2d 317, 323 (1981) to argue that efforts to limit or exclude coverage are construed against the insurer, but fails to acknowledge that Allstate has not tried to limit or exclude coverage. Rather, Allstate delivered a claim check jointly payable to Reynolds and Shoemaker in the amount of $28,500.53, an amount uncontested by Reynolds. The check endorsed by Shoemaker and bearing an alleged forgery of Reynolds' signature was cashed by the drawee bank. The rule is well established that a "debtor's liability is discharged when a check payable to the creditor is wrongfully indorsed by the creditor's agent and is paid by the drawee bank and the proceeds converted by the agent." *Fara, Inc. v. Gouvis*, 245 A.D.2d 483, 666 N.Y.S.2d 703, 705 (1997). Comment 1 to I.C. § 28–3–420 provides, in part, that delivery to an agent is delivery to the payee; Comment 1 also provides that where a check is payable to more than one payee, delivery to one of the payees is deemed delivery to all. As joint payee, Shoemaker served as Reynolds' agent for purposes of the check. *See Bank of America Nat. Trust and Sav. Ass'n v. Allstate Ins. Co.*, 29 F.Supp.2d 1129, 1141 (C.D.Cal.1998). As such, delivery to Shoemaker was proper. We therefore conclude that the delivery of the check made payable jointly to Shoemaker and Reynolds in an appropriate amount discharged Allstate's obligation on the underlying contract. Allstate's liability on the draft was then discharged when that draft was accepted by the Montana bank. I.C. § 28–3–414(3).

■ Reynolds requests attorney fees on appeal under I.C. § 41–1839 and Idaho Appellate Rule 41. Idaho Code § 41–1839 provides for attorney fees when an insurance company does not pay a claim, per the terms of a policy, within thirty days after proof of loss. The statute does not provide for attorney fees when a "tender of the full amount justly due" is made before the commencement of the action, as here. Therefore,

Reynolds is not entitled to attorney fees on appeal.

## III.

## CONCLUSION

We conclude that the clear and unambiguous language in the insurance contract names Shoemaker as the insured, but conditions his receipt of any claim proceeds upon the extent of Reynolds' interest. Thus, Allstate's delivery of the claim check jointly payable to Reynolds and Shoemaker fulfilled its obligations under the terms of the insurance contract. Accordingly, we affirm the order of the district court granting summary judgment and dismissing the action against Allstate. Allstate, as the prevailing party on appeal, is granted costs pursuant to I.A.R. 40.

Chief Judge LANSING and Judge Pro Tem WILPER concur.